[720 NYS2d 29]

CARYL P. RUBENFELD, Appellant, v STANLEY I. RUBENFELD, Respondent.

First Department, January 23, 2001

**APPEARANCES OF COUNSEL**

*Elliot R. Polland* of counsel, New York City (*Julie A. Interdonato* on the brief; *Lifshutz, Polland & Hoffman, P. C.,* attorneys), for appellant.

*Michael F. Teitler* of counsel, New York City (*Nicholas W. Lobenthal* on the brief; *Teitler & Teitler,* attorneys), for respondent.

**OPINION OF THE COURT**

TOM, J.

In this appeal we are asked to clarify an aspect of New York's Equitable Distribution Law. Specifically, we are directed to the requirement of Domestic Relations Law § 236 (B) (3), encompassing agreements concerning distribution of marital property, that to be valid and enforceable in a matrimonial action, they must be written, subscribed and acknowledged or otherwise proven in the manner necessary to record a deed. The present case involves whether a stipulation entered in open court settling an ongoing matrimonial action, which did not meet the formalities set forth in section 236 (B) (3), is valid and enforceable.

This husband and wife were married in 1952, have three adult children, and are each independently wealthy. The matrimonial action was instituted by the wife in 1997, and trial commenced on July 13, 1999. During the second day of trial, the respective attorneys informed the court that the parties were negotiating a property settlement. Over the course of the next two days, the wife with her attorney and two accountants worked out the financial details of the settlement to her satisfaction. On July 15, a stipulation of settlement was read into the record with schedules listing marital property, separate properties of the spouses, and a list establishing distribution of personal property. During allocution, both parties, on the record and under oath, stated that they had had an adequate opportunity to discuss the terms of the stipulation, that they understood its terms, and that they had no reservations regarding settling the actions according to those terms. Both parties expressed satisfaction with their respective attorneys and their representation. Each party acknowledged his and her entry into the agreement on a knowing and voluntary basis and that the settlement agreement set forth the entire agreement of the parties. Subsequently, the wife sought a judgment of divorce on the ground of constructive abandonment. She moved that the settlement agreement be incorporated into but not merged

with the judgment. The motion was granted and the judgment of divorce was signed on September 28, 1999. On that same day, though, the wife moved by order to show cause for an order vacating the stipulation of settlement. The wife now had new counsel. Apparently, this was the wife's fifteenth change of counsel during the course of the matrimonial action.

The wife, relying on Court of Appeals authority addressing a 1981 signed but unacknowledged post-nuptial agreement in light of section 236 (B) (3) (*Matisoff v Dobi,* 90 NY2d 127), challenged the validity of the stipulation on the basis that it was neither subscribed nor acknowledged nor provable in the manner required to record a deed. She also argued that the specific formalities required by Domestic Relations Law § 236 (B) (3) overrode the general authority conferred by CPLR 2104 allowing for in-court settlement by stipulation. Moreover, she now contended that she had not understood the stipulation, and had expected to be provided with a written agreement for her review setting forth the results of the in-court negotiations. In effect, she now viewed the stipulation as merely outlining a preliminary agreement of the parties, subject to further clarification and agreement upon some still-tentative terms to be finalized in writing. Curiously, though, the day after the motion for judgment of divorce was granted, the wife started asserting several rights under the stipulation of settlement.

The IAS Court saw finality where the wife belatedly saw vagueness and denied her motion to vacate the stipulation. The court was not persuaded by the applicability of a statute that imposes formalities on ante- and post-nuptial economic agreements to a stipulation entered in open court with all necessary formalities of such a stipulation to settle a divorce action. The court also noted that the wife herself had moved post-settlement to incorporate the terms of the settlement into the divorce, underscoring, rather than undermining, its manifest finality, and that the wife's allocution belied her present plea that the agreement was involuntarily entered. The husband subsequently moved to compel the wife to execute the documents necessary to effectuate the separation of the marital property, to direct that a residence be listed for immediate sale and that the wife vacate that residence by a date certain, and, in accordance with the stipulation of settlement, to appoint a Referee to oversee that sale and the distribution of proceeds. The wife cross-moved to direct the simultaneous distribution of various assets at a fair market value, including that residence, as contrasted with the $1 million value

established in the agreement. The motion was granted to the extent of directing the wife to execute necessary documents for distribution of marital assets and giving the wife until February 15, 2000 to execute a binding option to purchase the husband's interest in the residence at the negotiated price of $1 million in accordance with the stipulation of settlement. The wife appeals both orders and the judgment.

This case is readily resolved by reference to the precise terms of section 236 (B) (3) and by considering what the wife's cited authority, *Matisoff*, does not say.

Initially, the policy and evidentiary concerns underlying enactment of section 236 (B) (3), given effect by strict judicial application of the statute, are inapplicable to the present circumstances. Thus, we hold that the formalities of section 236 (B) (3), by the statute's terms and its legislative intent, do not govern an oral agreement entered on the record in open court during a matrimonial action intended to settle that action.

Section 236 generally constitutes New York's Equitable Distribution Law, enacted in major part in 1980 and designed to impose cohesion on the apportionment of responsibilities and property upon the dissolution of a marriage. Public policy has long favored agreements between marital parties as a means of avoiding or terminating litigation, which, historically, typically found form in separation agreements (*Galusha v Galusha*, 116 NY 635), but also ante-nuptial agreements (*Shonfeld v Shonfeld*, 260 NY 477) and agreements within the marriage. More recently, "[s]eparation, antenuptial, and other marital agreements have been given additional sanction by the Equitable Distribution Law." (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:11, at 338 [1999 ed].) We have made a similar point favoring stipulations of settlement, especially those entered in open court, and including those in matrimonial actions, where strict enforcement not only accomplishes efficient dispute resolution but also effectuates judicial economy (*Sanders v Copley*, 151 AD2d 350, 352, citing *Hallock v State of New York*, 64 NY2d 224, 230).

Among the features of the Equitable Distribution Law are provisions allowing parties before and during marriage to contractually opt out of the statute's system of support and maintenance (Scheinkman, *supra*). Section 236 (B) (3) states that "[a]n agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties,

and acknowledged or proven in the manner required to entitle a deed to be recorded. Such an agreement may include * * * provision for the ownership, division or distribution of separate and marital property." Hence, spousal parties may enter antenuptial, separation and other agreements during the marriage establishing their respective property rights as well as their rights and obligations regarding children of the marriage, subject to the statutory formalities. These provisions reflect "a strong policy in favor of efforts by parties to chart their own course in resolving family disputes" (Scheinkman, *supra*, at 338). However, the legislation imposes "onerous requirements for a nuptial agreement to be enforceable in a matrimonial action * * * [which] serves to prevent fraud, but perhaps more importantly * * * highlights to the parties the weighty personal choices to relinquish significant property or inheritance rights." (Scheinkman, *supra*, C236B:12, at 339.) The Court of Appeals has characterized the formalities of subscription and acknowledgment of the written nuptial agreement as a "bright-line rule" (*Matisoff*, *supra*, at 135). One commentator construes the formalities as a pre-condition to enforcement of a nuptial agreement in a *subsequent* matrimonial action (Scheinkman, *supra*, at 343). It bears noting that the present action was not commenced with a view to enforcing an extant agreement; rather, the agreement was entered as a means of settling the extant divorce action.

That is the major flaw of the wife's argument—this is not a nuptial agreement. The wife relies principally on *Matisoff*. However, *Matisoff*, which does squarely address section 236 (B) (3), turns on entirely different factors. In *Matisoff*, the wife, who had the greater financial resources, had initially urged that the parties enter the agreement at the time of their marriage. They entered and signed a written agreement providing for a distribution of assets in the event of a divorce, but the agreement remained unacknowledged. By the time of the divorce, though, the husband's income significantly exceeded that of the wife, and he sought to enforce the terms of the agreement. The Court of Appeals held that the terms of the statute were to be given full effect as written—the requirement of a written contemporaneous acknowledgment was mandatory rather than permissive. The *Matisoff* ruling, though, did not hold that section 236 (B) (3) applies to a different class of agreement, one terminating litigation, which was never within the contemplation of the Legislature in enacting the Equitable Distribution Law. Thus, *Matisoff* is distinguishable. Here, the wife

commenced an action for a divorce. That action was not commenced in part to give effect to an existing agreement regarding distribution of assets. Hence, there was no opting-out agreement providing an alternative to the distribution of assets otherwise addressed in section 236 generally. Insofar as there was no opting-out agreement, section 236 (B) (3) does not apply. Since section 236 (B) (3) is not triggered, its formalities do not govern what is only a stipulation, governed by CPLR 2104, settling the matrimonial action.

Neither this analysis nor this result is inconsistent with existing law. Our Court, as well as the Second Department, has declined to apply section 236 (B) (3) in analogous situations. As we have previously stated, this section "applies only to agreements entered into outside the context of a pending judicial proceeding, such as antenuptial agreements. We do not construe the statute as restricting the ability of the parties to terminate litigation upon mutually agreeable terms especially where, as here, the court has exercised its oversight" (*Sanders v Copley, supra,* at 351-352). We found that to hold otherwise would ignore substantial precedent and violate the oft-stated preference of New York law to promote settlements. The wife correctly points out that *Hargett v Hargett* (256 AD2d 50, *lv dismissed* 93 NY2d 919), relied on by the IAS Court, was decided in the context of a post-divorce action for equitable distribution. In the unusual circumstances of that case, the parties had obtained a foreign divorce and sought resolution of the property issues under New York law. There, we pointed out that section 236 (B) (3) applied only to agreements entered before or during the marriage, and we declined to apply it to the stipulation settling the post-divorce property dispute. However, the same result is required here, even though section 236 (B) (3) does not apply for a different reason.

The Second Department has developed a similar line of reasoning. The Second Department had directly addressed the question whether an oral stipulation entered into in open court settling a matrimonial action fell within the ambit of section 236 (B) (3) so as to require vacatur if the statutory formalities were deficient. Concluding in the negative, that Court opined that the Legislature, in enacting section 236 (B) (3), had not intended to discourage or impede the traditionally favored device of using stipulations, entered in open court, to settle matrimonial disputes thereby obviating the need for a full trial. Rather, the traditional bases for vacatur of stipulations, fraud, duress, mistake or overreaching, applied exclusively (*Har-*

*rington v Harrington*, 103 AD2d 356). The Second Department returned to the same issue again in *De Jose v De Jose* (104 AD2d 629, *affd* 66 NY2d 804) and in *Robinson v Robinson* (111 AD2d 316), finding section 236 (B) (3) inapplicable as to on-the-record stipulations settling property issues within a matrimonial action "which are spread upon the record in open court" (*De Jose, supra*, at 630) and remain binding and strictly enforceable absent one of the traditional grounds for vacatur. Again, in recent decisions post-dating *Matisoff*, the Second Department gave effect to such stipulations (*Nordgren v Nordgren*, 264 AD2d 828; *Natole v Natole*, 256 AD2d 558).

We would agree with the Second Department that especially when counsel and the parties are present and participating, the need for a writing is a hollow formality. The Second Department found, as do we, that nowhere in the *Matisoff* ruling was there any indication that the Court of Appeals intended to abrogate such well-settled law.

Concededly, applying Third Department authority (*see, e.g., Harbour v Harbour*, 243 AD2d 947, *lv dismissed* 92 NY2d 845; *Lischynsky v Lischynsky*, 95 AD2d 111) would require vacatur of the in-court stipulation of settlement. However, we join the Second Department in explicitly declining to follow it.

Accordingly, the judgment of the Supreme Court, New York County (Joan Lobis, J.), entered October 7, 1999, granting plaintiff a divorce and equitably distributing the parties' marital property in accordance with their open court stipulation of settlement, and the orders, same court and Justice, entered November 16, 1999 and January 25, 2000, respectively, which denied plaintiff's motion to vacate the stipulation of settlement and granted defendant's motion to compel plaintiff's compliance with the stipulation, should be affirmed, without costs.

WILLIAMS, J. P., MAZZARELLI, RUBIN and SAXE, JJ., concur.

Judgment, Supreme Court, New York County, entered October 7, 1999, and orders, same court, entered November 16, 1999 and January 25, 2000, respectively, affirmed, without costs.