OPINION OF THE COURT
Paul I. Marx, J.
It is ordered that the application is disposed of as follows:
Background
The parties[1] were married on August 28, 2004. There are three unemancipated children of the marriage: C.D., born xx/xx/xxxx; and twins, E. and A.D., born xx/xx/xxxx.
On May 14, 2012, Keri Defilippi filed an action for divorce against Kris Defilippi in this court (Defilippi v Defilippi, index No. 3137/2012), based upon the irretrievable breakdown of the marriage pursuant to Domestic Relations Law § 170 (7). The parties and their counsel negotiated a settlement of the action and drafted and executed a written stipulation of settlement, dated December 4, 2013. (Notice of motion to dismiss, exhibit D, stipulation of settlement of Keri Defilippi and Kris A. Defilippi.) Both parties initialed each page and signed the last page of the stipulation of settlement. In addition, both parties executed a sworn and notarized affidavit attesting that each one had read the stipulation in its entirety, understood the contents and agreed that it accurately embodied and contained all of the terms of their agreement. Each party attested that he or she voluntarily entered into the stipulation of settlement with the advice of counsel and without duress or coercion or the influence of drugs or alcohol. A copy of each party’s affidavit is appended to the stipulation of settlement. However, neither the stipulation of settlement nor the affidavits contain an acknowledgment that conforms to the requirements of Domestic Relations Law § 236 (B) (3).[2]
The stipulation of settlement is a full and complete recitation of the terms of the parties’ agreement, consisting of 51 *939 pages. It provides for the disposition of the parties’ personal property, responsibility for debts, and the release and discharge of any rights under any will, codicil or testamentary writing. The stipulation further provides for joint legal custody and access pursuant to a schedule set forth in the agreement. It also provides that child support payments in the amount of $2,750 per month are to be paid by plaintiff to defendant. The stipulation states that no maintenance or support payments are to be made by either party.[3] (Id. at 12.) It sets out comprehensive terms for equitable distribution, including allowing each to retain any “bank, brokerage, securities and stock accounts, real estate, business interest, income, partnership interest, stock options, degrees, enhanced earning capacity, security deposits, IRAs, 401K plans, 403b plans, profit sharing and pension plans in his/her name.” (Id. at 29.) It provides for defendant to deliver the deed to the marital residence to plaintiff and that he shall defend a pending foreclosure action. The stipulation lists three entities and four real properties that are solely owned by plaintiff. It provides for defendant to receive $250,000 for equitable distribution, according to a schedule of payments. The stipulation contains further provisions regarding taxes and insurance.
On March 28, 2014, the divorce documents, including the executed stipulation of settlement, were submitted to the undersigned for review and signature, with notice to plaintiff and his counsel. Plaintiff did not object to the divorce documents or proposed judgment[4] or submit a counter proposed judgment. Plaintiff did not point out any defect in the stipulation of settlement or seek to set it aside. Neither party requested to appear in court to be allocuted on the terms of the stipulation of settlement.
*940 On April 3, 2014, the undersigned executed the proposed judgment of divorce dissolving the parties’ marriage. The stipulation of settlement was incorporated, but not merged, into the judgment of divorce. (Notice of motion to dismiss, exhibit H, judgment of divorce.)
Plaintiff did not move to vacate or appeal from the judgment of divorce.[5]
[6] For more than a year after the stipulation of settlement was entered into, plaintiff complied with its terms, including making child support and equitable distribution payments to defendant. However, plaintiff’s compliance has been inconsistent, necessitating defendant to file enforcement petitions in Family Court on July 16, 2014 and March 24, 2015. (Notice of motion to dismiss, exhibits L, M.) In addition, defendant filed a family offense petition against plaintiff on November 6, 2014 and obtained a temporary order of protection. (Notice of motion to dismiss, affirmation of David M. Rosoff, Esq.) That petition was settled by stipulation on February 11, 2015, but plaintiff failed to sign the stipulation. Plaintiff also failed to make the equitable distribution payment due to defendant on April 1, 2015. (Id.)
Plaintiff filed a petition in Family Court on January 7, 2015, seeking to modify his support obligation based upon his alleged lack of sufficient income. On February 27, 2015, plaintiff withdrew his petition.
On March 26, 2015, plaintiff filed the instant action against defendant, seeking to set aside the stipulation of settlement they had entered into in their prior divorce action. Plaintiff alleges that the stipulation of settlement is void ab initio, because Domestic Relations Law § 236 (B) (3) required it to be “acknowledged or proven in the manner required to entitle a deed to be recorded.” Plaintiff requests that the provisions in the judgment of divorce regarding child support and maintenance be vacated and set aside. He claims that he should be allowed to recoup the sum of $170,000 he paid defendant for her share of equitable distribution and the $41,250 of support payments he has made to defendant. In the alternative, plaintiff requests that any monies he has paid to defendant be used to offset any future monetary obligations deemed owed to her, including child support. Plaintiff asks the court to conduct a de *941 novo review of child support, eliminate maintenance, recoup the equitable distribution payment he has made or use it as a setoff against future child support or other awards made to defendant. However, he also requests that the court issue an order leaving the access schedule in place and providing joint legal and physical custody of the parties’ children. In essence, plaintiff seeks to rewrite the terms of the stipulation of settlement.
After service of the summons and complaint in this action, defendant’s counsel telephoned plaintiff’s counsel and followed up with a confirming letter advising counsel that the complaint failed to state a valid cause of action. Defense counsel requested plaintiff’s counsel to withdraw the action and stated that defendant would seek attorney’s fees and sanctions if the action was not withdrawn.
Discussion
Dismissal
Defendant moves to dismiss this action on the ground that it fails to state a cause of action, because the stipulation of settlement was properly executed in accordance with the law prevailing in the Second Department. Defendant relies primarily on the decision in Rio v Rio (110 AD3d 1051 [2d Dept 2013]). She contends that Rio is controlling law on the issue of whether an agreement settling a divorce action must comply with the formalities of Domestic Relations Law § 236 (B) (3), which requires an acknowledgment in the manner required for a deed to be recorded. She asserts that Rio plainly stated that Domestic Relations Law § 236 (B) (3) only applies to nuptial agreements that are entered into outside of a pending judicial proceeding. Defendant contends further that Rio held that CPLR 2104 and not Domestic Relations Law § 236 (B) (3) governs execution of an agreement between parties settling their pending divorce action. Therefore, she asserts, Rio provides that the lack of an acknowledgment in a form which would allow a deed to be recorded does not void the stipulation of settlement entered into by the parties.
In opposition, plaintiff contends that “all divorce agreements” between spouses “where judicial oversight is not present” must satisfy the requirements of Domestic Relations Law § 236 (B) (3). (Mem of law in opposition at 3.) He argues that the stipulation of settlement is not valid because it was not acknowledged in the manner required by Domestic Relations Law § 236 *942 (B) (3). He claims that Rio and the other cases cited by defendant are distinguishable because they involved “a high level of judicial oversight.” Plaintiff seems to suggest by his argument that a strict application of Domestic Relations Law § 236 (B) (3) may be obviated by judicial oversight. That position is inconsistent with plaintiff’s pleading, which alleges that Domestic Relations Law § 236 (B) (3) must be strictly applied. More importantly, it is at odds with the Court of Appeals’ decisions in Matisoff v Dobi (90 NY2d 127 [1997]) and Galetta v Galetta (21 NY3d 186 [2013]), which require strict compliance with Domestic Relations Law § 236 (B) (3) for nuptial agreements to be held valid and enforceable.
Matisoff involved a postnuptial agreement entered into one month after the parties married, which the husband sought to enforce 13 years later in the divorce action the wife commenced against him. There was no question that the agreement at issue in Matisoff was the type of agreement that is governed by Domestic Relations Law § 236 (B) (3), because it was “a nuptial agreement made before or during the marriage.” The issue for the court was whether the agreement was valid because it was not acknowledged. Reversing the trial court, the Appellate Division upheld the postnuptial agreement based upon its determination that “the terms of the postnuptial agreement ‘were acknowledged and ratified in the daily activities and property relations of the parties throughout [the] marriage.’ ” (Matisoff at 131, quoting Appellate Division, Matisoff v Dobi, 228 AD2d 200, 202 [1st Dept 1996].)
The Court of Appeals reversed the Appellate Division, finding that its analysis would create uncertainty, because the decision whether to enforce an unacknowledged nuptial agreement would depend on whether the couple acted consistent with their agreement during their marriage, as well as the original intent of the parties. The Court stated that “[s]uch uncertainty is contrary to the plain language of Domestic Relations Law § 236 (B) (3), which recognizes no exception to the requirement of formal acknowledgment.” (Id. at 132.) “[B]y clearly prescribing acknowledgment as a condition, with no exception, the Legislature opted for a bright-line rule. [The Court] therefore [held] that an unacknowledged agreement is invalid and unenforceable in a matrimonial action.” (Id. at 136.) The parties could not substitute an acknowledgment, absent at the time of execution of their agreement, with their later testimony at trial regarding the manner of execution and *943 the absence of fraud or duress. Where an acknowledgment is completely absent from a nuptial agreement, the agreement is unenforceable.
In Galetta, the Court of Appeals reaffirmed its holding in Matisoff that Domestic Relations Law § 236 (B) (3) “recognizes no exception to the requirement that a nuptial agreement be executed in the same manner as a recorded deed and ‘that the requisite formality explicitly specified in Domestic Relations Law § 236 (B) (3) is essential.’ ” (Galetta at 191, quoting Matisoff at 132.) The issue addressed by the Court in Galetta was whether a prenuptial agreement was invalid because one of the certificates of acknowledgment that accompanied the agreement was defective. The certificate of acknowledgment of the husband’s signature omitted a critical phrase indicating that the notary public had confirmed the husband’s identity and that the husband was the person described in the agreement. In a divorce action commenced by the wife more than 13 years after the prenuptial agreement was executed, the wife sought a declaration that the agreement was not enforceable due to the defect in the acknowledgment. The husband argued for enforcement of the agreement on the ground that it was in substantial compliance with Real Property Law § 291. In his opposition to his wife’s motion for summary judgment, the husband included an affidavit from the notary public who had witnessed his signature on the agreement. The notary public attested that it was his custom and practice to confirm the identity of the person who signed a document and that the person was the one described in the document. The notary presumed that he had acted in accordance with his customary practice when he witnessed the husband’s signature on the agreement.
Because Real Property Law § 291, which governs the recording of deeds, supplies the standard for an acknowledgment and “a deed may be recorded if it is either ‘duly acknowledged’ or ‘proved’ by use of a subscribing witness” (Galetta at 191), the Court examined the acknowledgment procedure and methodology of Real Property Law § 291 to determine whether the notary public’s affidavit could cure the defect in the acknowledgment. Ultimately, the Court did not resolve the issue whether a defective acknowledgment could be cured, because it found the notary public’s affidavit to be insufficient. However, the Court stated that establishing a rule which precludes curing a defective acknowledgment would ensure that at the time the parties enter into a nuptial agreement, they are fully cognizant *944 of “the significance of the document” and have entered into it with “a measure of deliberation.” (Id. at 196.) The purpose behind the acknowledgment is to enable a court to enforce the agreement in a subsequent matrimonial action. (Id.)
In Matisoff and Galetta, there was no question as to the applicability of Domestic Relations Law § 236 (B) (3), because both cases involved nuptial agreements that were made before, or shortly after marriage and were entered into outside of a judicial proceeding to terminate the marriage. The Court of Appeals has not yet addressed the issue of whether Domestic Relations Law § 236 (B) (3) applies to stipulations of settlement entered into in a matrimonial action. The Appellate Divisions are split on the issue. The First and Second Departments hold that the statute does not apply to such agreements made in open court. (Rubenfeld v Rubenfeld, 279 AD2d 153, 158 [1st Dept 2001]; Nordgren v Nordgren, 264 AD2d 828 [2d Dept 1999].) The Third and Fourth Departments hold the opposite. (Lischynsky v Lischynsky, 95 AD2d 111 [3d Dept 1983]; Hanford v Hanford, 91 AD2d 829 [4th Dept 1982] [applying Giambattista v Giambattista (89 AD2d 1057 [4th Dept 1982])].)
The Second Department has long held that stipulations of settlement in matrimonial actions that are made in open court are governed by CPLR 2104, rather than Domestic Relations Law § 236 (B) (3). In Harrington v Harrington (103 AD2d 356, 360-361 [2d Dept 1984]), the Court stated that Domestic Relations Law § 236 (B) (3) “should not be utilized to prohibit an oral stipulation made in open court, but should be more reasonably interpreted ‘as encouraging agreements between the parties before and during the marriage provided that they are in writing and properly subscribed and acknowledged or entered into in open court.’ ” (Citation omitted.) Following the Court of Appeals’ decision in Matisoff, the Second Department explicitly stated that “ ‘there is nothing in Matisoff v Dobi (90 NY2d 127), which indicates that the Court of Appeals intended to abrogate [the] well-settled law or CPLR 2104.’ ” (Nordgren at 829, quoting Natole v Natole, 256 AD2d 558, 559 [2d Dept 1998].)
In Rio, the Second Department extended its holding further to apply to a written agreement entered into between the parties to resolve their divorce action, although it was not entered *945 into in open court.[6] There were two prior agreements at issue in the parties’ pending divorce action: a duly acknowledged separation agreement dated March 11, 2005, and a postnuptial agreement executed on September 22, 2009 during the parties’ prior divorce action. The prior action was discontinued when the parties entered into an agreement, which their counsel denominated as a postnuptial agreement. The husband commenced a later divorce action seeking to invalidate the post-nuptial agreement and enforce the duly acknowledged separation agreement. The Appellate Division upheld the validity of the postnuptial agreement, which revoked the prior separation agreement, specifically finding “that Domestic Relations Law § 236 (B) (3) does not compel a different result.” (Rio at 1053.) The Court explained that it upheld the stipulation of settlement in that case because “it ‘was executed in the context of a pending divorce proceeding, and was subject to judicial oversight, even though it was not signed in open court.’ ” (Rio at 1053-1054, quoting Acito v Acito, 23 Misc 3d 832, 836 [Sup Ct, Bronx County 2009], affd 72 AD3d 493 [1st Dept 2010], citing CPLR 2104.)
Plaintiff argues that the decision in Rio was made based upon “a unique and complicated set of facts” that are not present in this case. (Mem of law in opposition at 5.) Indeed, the facts in Rio were somewhat complicated. Nevertheless, the Appellate Division upheld the validity of the postnuptial agreement terminating the prior divorce action, even though it was not made in open court. (Rio at 1053.) In making its determination, the Appellate Division made two statements that are of critical importance. First, the Court stated that “Domestic Relations Law § 236 (B) (3) ‘applies only to agreements entered into outside the context of a pending judicial proceeding.’ ” (Id., quoting Rubenfeld, 279 AD2d at 158.) Second, the Court stated that “[stipulations of settlement are favored by the courts and are not lightly cast aside.” (Id., quoting Castellano v Castellano, 66 AD3d 942, 942 [2d Dept 2009].)
What is curious (and somewhat troubling) about Rio is the Court’s statement that the postnuptial agreement settling the action was “subject to judicial oversight.” (Rio at 1054 [internal quotation marks omitted].) Indeed, it appears from the decision that at the time the agreement was negotiated and entered into between counsel for the parties, there was no involvement *946 by the trial court and no opportunity for judicial oversight. The parties executed the agreement and filed a stipulation to discontinue the prior divorce action. There was no judgment of divorce and no review by the court of the agreement or any allocution by the court as to its terms. Judicial oversight of the agreement only came later in the subsequent divorce action in the form of “the Supreme Court referring] to the appellant’s obligations pursuant to the postnuptial agreement in two prior orders.” {Rio at 1053.) Therefore, while the Court upheld the validity of the agreement without an acknowledgment or allocution by the court on its terms, it is not entirely clear that the Court intended to dispense completely with the requirement of judicial oversight.
Nevertheless, Rio reaffirms the Second Department’s position that the lack of an acknowledgment consistent with Domestic Relations Law § 236 (B) (3) does not void a stipulation of settlement terminating a matrimonial action. As both the First and Second Departments have long held,
“section 236 (B) (3) of the Domestic Relations Law applies only to agreements entered into outside the context of a pending judicial proceeding, such as antenuptial agreements. . . . [T]he statute [does not restrict] the ability of the parties to terminate litigation upon mutually agreeable terms especially where, as here, the court has exercised its oversight and [approved] the stipulation.” (Sanders v Copley, 151 AD2d 350, 351-352 [1st Dept 1989].)
The Second Department’s position is consistent with the “long favored” judicial policy of “encouraging] the fashioning of stipulations as a means of expediting and simplifying the resolution of disputes.” (Mitchell v New York Hosp., 61 NY2d 208, 214 [1984], citing Salesian Socy. v Village of Ellenville, 41 NY2d 521, 525-526 [1977].) That policy is equally applicable in matrimonial actions. (Natole at 558; Sanders.) “Generally, therefore, a stipulation will only be set aside for good cause, such as fraud, collusion, mistake, accident, or some other ground of the same nature.” (Sanders at 352 [internal quotation marks omitted].) Plaintiff does not allege any of these bases for setting aside the stipulation of settlement in this case.
Even if Rio did not intend to dispense completely with judicial oversight of a settlement agreement, the stipulation of settlement in this case satisfied the requirement for judicial *947 oversight.[7] “[A]n acknowledgment is not required to enforce a written stipulation of settlement subscribed by the parties and so ordered by the court.” (Acito, 72 AD3d at 494.) The parties’ stipulation of settlement complies with the requirement of CPLR 2104 that it be “in a writing subscribed by [them].” (Luisi v Luisi, 244 AD2d 464, 464 [2d Dept 1997] [“CPLR 2104 states that to be enforceable, a stipulation, unless reduced to the form of an order and entered, must be in writing and signed by a party or his attorney”].) This court exercised its oversight when it reviewed the divorce documents and signed the judgment of divorce, which incorporated but did not merge the stipulation of settlement.[8]
Moreover, even if section 236 (B) (3) applied to the stipulation of settlement, it would only require invalidation of the equitable distribution portion of the agreement, because “the requirement for a signed, acknowledged writing applies only to stipulations which effect equitable distribution.” (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:18 at 185, citing Kelly v Kelly, 19 AD3d 1104 [4th Dept 2005], lv and rearg denied 21 AD3d 1442 [2005], appeal dismissed 5 NY3d 847 [2005], denied reconsideration, lv dismissed in part, denied in part 6 NY3d 803 [2006].) The provisions of stipulations regarding other ancillary issues, such as custody, have been enforced, even where the equitable distribution portion has been invalidated for failing to satisfy the requirements of Domestic Relations Law § 236 (B) (3). (Kelly.)
Accordingly, this court declines to permit plaintiff’s obvious collateral attack on his child support and other obligations he agreed to in the stipulation of settlement.
Ratification
Finally, defendant argues that plaintiff cannot challenge the stipulation of settlement, because “[b]y receiving the benefit of Defendant’s compliance with the Stipulation of Settlement for *948 nearly one and one half years, Plaintiff has ratified [the] Stipulation and waived any objection to the acknowledgment.” (Mem of law in support of motion to dismiss at 8.) Plaintiff certainly has enjoyed the benefits of the stipulation of settlement, which allowed him to maintain ownership of his business and retain all of the profits from it. He has also been able to keep his share of equitable distribution and pay defendant her share according to a schedule of payments. Moreover, he has had joint custody and access to the parties’ children in accordance with the schedule set out in the agreement, which he seeks to maintain even though he desires to set the stipulation of settlement aside in all other respects. “A party who ‘accepts the benefits provided under a[n] agreement for any considerable period of time’ is deemed to have ratified the agreement and thus, ‘relinquishes the right to challenge that agreement.’ ” (Rio at 1054, quoting Wasserman v Wasserman, 217 AD2d 544, 544 [2d Dept 1995]; see Kessler v Kessler, 89 AD3d 687, 688 [2d Dept 2011]; Cosh v Cosh, 45 AD3d 798, 800 [2d Dept 2007].) Accordingly, plaintiff is also bound by the provisions in the stipulation of settlement which he now considers burdensome.
Attorney’s Fees
Defendant requests an award of attorney’s fees and costs related to bringing the motion to dismiss. She relies upon the provision in the stipulation of settlement which provides that “[i]f either Party is required to bring a judicial action or proceeding to enforce his or her rights under this Agreement and judgment is entered in favor of a Party, then the other Party shall pay the reasonable legal fees and expenses of such Party.” (Stipulation of settlement, art XXI, ¶ 7.)
The court having determined that the stipulation of settlement is valid and that defendant should prevail on her motion to dismiss, she is entitled to an award of attorney’s fees and costs for defending against plaintiff’s action. Defendant seeks $10,380 for counsel fees and costs.[9] Plaintiff does not address defendant’s request for attorney’s fees and costs based upon the stipulation of settlement and he does not contest the amount of fees sought by defendant. Upon review of defendant’s fee application, the court grants an award of $8,000, which it deems to be a reasonable amount after considering all of the circumstances of this case. Plaintiff shall pay that *949 amount directly to defendant’s counsel within 30 days of the date of this decision and order.
Sanctions
Defendant also requests sanctions against plaintiff for filing a frivolous action. The court declines to award sanctions because the decision in Rio is subject to interpretation. As discussed earlier, Rio is not entirely clear whether judicial oversight of an agreement settling a divorce action is required to render it enforceable in a later divorce action between the same parties. As one commentator stated: “the facts [in Rio] are somewhat unusual and, in any event, the husband, who was bringing the challenge to the agreement, was also held to have ratified the agreement.” (Scheinkman, 2014 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Domestic Relations Law C236B:12.) Although the decision in Rio supports defendant’s position and warrants dismissal of the action, the court declines to award sanctions against plaintiff, for it cannot be fairly said that no “reasonable argument for an extension, modification or reversal of existing law” could be made. (22 NYCRR 130.1-1 [c] [1].)
Conclusion
Defendant’s motion to dismiss and application for attorney’s fees are granted. This action is dismissed. In addition, plaintiff shall pay $8,000 directly to defendant’s counsel within 30 days of the date of this decision and order.
Defendant’s request for sanctions against plaintiff is denied.

. The parties are not consistent in the way they write their surname. Plaintiff uses a lower case “f” and writes it as one word, “Defilippi.” Defendant uses an upper case “F” and separates the two parts, as “De Filippi.” The court opts to use the plaintiff’s version.

. The parties agreed in the stipulation of settlement that their “Agreement is entered into and is to be governed by Section 236, Part B of the Domestic Relations Law of the State of New York, commonly known as the Equitable Distribution Law.” (Notice of motion to dismiss, exhibit D, stipulation of settlement at 3 [second “Whereas” clause].) The stipulation also contains a severability clause by which the parties agreed that if any provision is declared illegal or invalid, the remainder of the agreement shall continue in full force and effect.

. Curiously, despite this clear provision in the stipulation of settlement, plaintiff alleges that “the maintenance provision must be set aside by the Court and Plaintiff eliminated from any further obligation to pay maintenance to Defendant.” (Notice of motion to dismiss, exhibit I, verified complaint, ¶ 17.) Plaintiff also alleges that he has paid “fifteen (15) months of maintenance payments in the amount of $41,250.” (Id. ¶ 21.) In fact, that amount corresponds to 15 months of child support in the amount of $2,750 per month. (Stipulation of settlement, art VIII, ¶ 1.) The judgment of divorce also mislabels child support as maintenance. (Notice of motion to dismiss, exhibit H at 3.)

. Indeed, plaintiff’s counsel signed the proposed judgment of divorce submitted to the court, indicating that it was “Approved as to form and substance.” (Notice of motion to dismiss, exhibit H, judgment of divorce at 5.)

. Plaintiff cannot now seek to vacate the judgment of divorce. He may seek to set aside the stipulation of settlement because it did not merge into the judgment of divorce. Contrary to defendant’s contention, this plenary action is a proper means to challenge the stipulation of settlement.

. This court’s research did not disclose any reported decisions of any of the other Departments addressing this issue.

. Defendant claims that the parties’ affidavits attached to the stipulation of settlement “are identical to the void [sic] dire employed in open court to determine that a stipulation is knowing and voluntary.” Although the parties made similar statements to those that are generally made during a court’s allocution of the parties on the terms of their settlement, their affidavits cannot replace an open court stipulation. The court is more than a functional equivalent of a notary.

. This is true despite the mislabeling of the child support payments as maintenance, an error perpetuated by both counsel who submitted the divorce documents.

. Defendant’s moving papers sought $7,400 in fees. That amount ballooned to $10,380 based on counsel’s receipt and review of plaintiff’s opposition and preparation of reply papers.