L.D. v O.D. (2024 NY Slip Op 50324(U))

[*1]

L.D. v O.D.

2024 NY Slip Op 50324(U)

Decided on March 26, 2024

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 26, 2024
Supreme Court, Westchester County

L.D., Plaintiff(s),

against
O.D., Defendant(s).

Index No. 1092/2016

James L. Hyer, J.

The following papers, numbered 1 to 20, were considered in connection with Plaintiff's Order to Show Cause, dated January 23, 2024, seeking, inter alia, to hold Defendant in contempt. 
PAPERS NUMBERED
Order to Show Cause/Affidavit in Support/Affirmation in Support/Exhs. A-F 1-9
Affidavit in Opposition/Memorandum of Law in Opposition/Exhs. A-H 10-19
Reply Affirmation 20
Plaintiff commenced this action for divorce and ancillary relief against Defendant with the filing of a Summons with Notice on January 15, 2016. The parties have two children — I.D. (age: 22; DOB: xx/xx/2001), and T.D. (age: 21; DOB: xx/xx/2003). The parties entered into a Parenting Agreement on August 18, 2018 and a Stipulation of Settlement on August 19, 2016, both of which were incorporated but not merged into the Judgment of Divorce entered on January 18, 2017 (Jamieson, J.) (NYSCEF Doc. Nos. 59-60, No. 61 at 5-6). 
On January 23, 2024, Plaintiff presented an Order to Show Cause (Mot. Seq. #5), seeking an Order:
a. Punishing Defendant by fine or imprisonment or both for contempt on the ground that he has refused or willfully neglected to obey the terms of the Decision After Hearing (Murphy, J.) filed and entered on January 4, 2022, and the Order (Hyer, J.) May 5, 2023, in that the defendant failed to pay his 85% share of the college obligation for the parties' daughter, I.D.; and
b. Awarding Plaintiff counsel fees in the amount of $7500 with leave to apply for additional fees if necessary; and
c. Such other and further relief as the Court deems just and proper.
The Court conformed the Order to Show Cause, directing that Defendant be served by personal service, and that parties and counsel appear on the return date of January 31, 2024 at 10:00 a.m., at which time the Court would set a briefing schedule, if needed (NYSCEF Doc. No. 54).
On January 31, 2024, Plaintiff, Plaintiff's counsel, and pro-se Defendant appeared at the conference. The Court appointed Scott Stone, Esq. as 18-b counsel for Defendant, and set a briefing schedule (NYSCEF Doc. Nos. 55-56). Defendant filed his opposition papers on February 16, 2024. Plaintiff filed her reply papers on February 22, 2024, and the motion was deemed fully submitted. 
Plaintiff argues that she complied with the default provisions of the parties' Stipulation of Settlement when her attorney sent a letter to Defendant on November 2, 2023 and an email, notifying Defendant of certain defaults and giving him 20 days to cure. Plaintiff asserts that Defendant has failed to provide his 85% share of the costs of the children's college education in accordance with the Court's January 4, 2022 Decision and Order (Murphy, J.). Plaintiff also states that on May 5, 2023 (NYSCEF Doc. No. 51), when the parties appeared before the undersigned on a prior contempt application (Motion Seq. #4), they reached a stipulation where "Defendant acknowledged arrears of $289,899 of mostly maintenance and child support that the Defendant failed to pay while earning in the range of $300,000/year" (Affidavit in Support at ¶9). Plaintiff maintains that the May 5, 2023 Stipulation, "confirm[s]" that the only thing that remains in full force and effect from Judge Murphy's decision and order is the pro-rata on the children's college education" (Affidavit in Support at ¶10). 
Plaintiff emailed Defendant on September 18, 2023 and September 19, 2023, with attachments, the cost and billing information for I.D.'s college costs, rent, and other college-related expenses (Affidavit in Support at ¶12; Exhibit E). Plaintiff maintains that Defendant refused to pay. On December 18, 2023, Plaintiff sent Defendant another email "reiterating his prior obligations and forwarding proof of payments along with the bill due for the term starting in January [2024]", but as of the date of the motion, according to Plaintiff, Defendant "has not paid any of the bills directly or reimbursed me for his share of the college expenses" (Affidavit in Support at ¶13). Plaintiff also seeks counsel fees for having to bring this application.
In opposition, Defendant argues that Plaintiff failed to comply with the Parenting Agreement because Plaintiff did not consult him about I.D.'s college education. He states that rather than being consulted, he was informed, after the decision was made, that I.D. was to attend Rensselear Polytechnic Institute ("RPI") for the 2023-2024 academic year. Defendant notes that I.D. "previously attended Dundee University in Scotland, before voluntarily dropping out before the completion of her junior year to pursue a full-time modeling career for a little over a year which, by itself, constitutes emancipation" (Affidavit in Opposition at ¶4). Defendant argues that both children are emancipated as I.D. is 22 years old (and will turn 23 at the end of 2024), and T.D. is 21 years old. Defendant notes that the Stipulation of Settlement fails to define "emancipation event", despite being mentioned four times throughout that document. Accordingly, Defendant asserts that "in the absence of express language stating otherwise, which is not present in either the Parenting Stipulation or our [Financial] Agreement, my obligation for child support, child support add-ons and other related expenses, including but not limited to education and college expenses, terminates at the age of twenty-one (21) pursuant to DRL § 240 and FCA § 413" (Affidavit in Opposition at ¶6). Finally, Defendant states he is unable to afford the cost of RPI because 60% of his income is being garnished by SCU pursuant to the May 5, [*2]2023 agreement (Affidavit in Opposition at ¶¶7-11).
In reply, Plaintiff argues that "[o]nly nine (9) months ago, represented by competent counsel, Defendant stipulated to arrears and swore to maintain his ongoing obligations which included his college obligation which obligation was specifically repeated in the last transcript" (Reply Affirmation at ¶2). Plaintiff notes that while Defendant argues that he was not consulted about I.D.'s enrollment at RPI for the 2023-2024 school year, "Defendant participated and contributed to [I.D.]'s attendance at Dundee University, until she withdrew to pursue an alternate career. Defendant continued to support [I.D.], as did Plaintiff. [I.D.] remained reliant upon the support of her parents during this time between schools. At no point was she financially independent or living as an emancipated child" (Reply Affirmation at ¶5). Plaintiff further argues that "the interpretation of the agreement is in favor of the continued support of the children, as has every order and directive that has followed, and cannot be interpreted otherwise" (Reply Affirmation at ¶16). According to Plaintiff, "Defendant proposes the Court is prohibited from considering the surrounding language contained within the four corners of the agreement for interpretation and cannot appoint meaning," "[i]ronically" arguing "in support of a definition not found within the Agreement, one that goes against the rest of the contract in that it alleviates Defendant of his financial responsibilities to Plaintiff and his daughters" (Reply Affirmation at ¶16). 
The parties' August 18, 2016 Parenting Stipulation, which was incorporated but not merged into the Judgment of Divorce, provides, inter alia (NYSCEF Doc. No. 59 at 8) (emphasis added):
12. Major Decisions and Meaningful Consultation. The parties shall confer with each other on all major decisions with a view toward arriving at a harmonious policy calculated to promote the Children's best interests. All major decisions as defined herein shall first be discussed by the parties, with the parties working in good faith to agree on a joint decision. As used in this Stipulation, major decisions shall include (a) the Children's non-routine medical (inclusive of optical, psychiatric, psychological, and therapeutic treatment) and dental treatment, inclusive of orthodonture; (b) the Child(ren)'s education, including the selection of schools, extracurricular help, special programs with schools, and selection of a college; (c) the Child(ren)'s extracurricular activities and summer activities, including camp; (d) the Children's religious upbringing; (e) activities which could be dangerous (i.e. hunting, motorcycling, flying lessons, sky diving, and scuba diving).
Further, the parties' August 18, 2016 Stipulation of Settlement, which was incorporated but not merged into the Judgment of Divorce, provides, inter alia (NYSCEF Doc. No. 60 at 29-30, 31-34, 36, 43, 72):
Child Support
13. A. Commencing on the first day of the month following the Wife' s vacatur from the Marital Residence with the Children and prorated for the month in which she moves, and continuing on the first day of every month until the first to occur of a (a) Maintenance Termination Event or (b) "Child Support Termination Event" (defined herein) the Father shall pay the Mother the sum of Three Thousand Three Hundred and Thirty Three Dollars ($3,333) per month, which amount comports with the Child Support Guidelines [*3]("CSSA") using (a) the child support percentage applicable to the then un-emancipated Children, i.e., 25% for two Children; and (b) an income cap on total combined "gross income," i.e., "Medicare ages and tips" less Medicare tax withheld less social security withheld of $200,000 of the Husband's income; and (c) a pro-rata share of each Party's "gross income," i.e., "Medicare ages and tips" less Medicare tax withheld less social security withheld (less with regard to the Father Taxable Maintenance Payments, i.e., $36,000 and plus with regard to the Mother Taxable Maintenance Payments, i.e., $36,000), i.e., of this Agreement of 85% Husband/15% Wife
B. Commencing on May 1, 2017 and continuing on May 1st each year thereafter for so long as Child Support is due as well as upon the termination of spousal maintenance pursuant to the provisions of this Stipulation, the Child Support shall be readjusted and the Husband shall provide a complete copy of his Federal Tax Return to the Wife for purposes of making the calculation. To the extent that the Husband is still paying maintenance, the parties shall calculate child support (25% for two children and 17% for one child) based upon income in excess of $200,000 and up to $300,000 after deducting the additional maintenance. Upon the cessation of maintenance, child support shall be calculated on the Husband's income up to $300,000. The additional child support payments due and owing on the Husband's income in excess of $200,000 and up to $300,000 shall be paid on or before May 15th each year.
* * *
14. Except for arrears accrued, if any, other accrued and unsatisfied obligations of the Father, or for other reasons set forth herein, the obligations of the Father with respect to the Basic Child Support Payments, all "Child Related Expenses'' (as hereinafter defined), and all other obligations of the Father including those set forth in Article X (the "College Expenses'') shall end with respect to a Child upon the earliest to occur of:
(a) an Emancipation Event with respect to a Child;
(b) the death of the Father; or
(c) the death of the Mother ("a"-"e" herein collectively defined as "Child Support Termination Event").
Child Related Expenses
15. The Father shall pay 85% and the Mother shall pay 15% of the unreimbursed medical, prescription drug, dental and optical expenses, including without limitation, orthodontics, therapy costs, surgical, nursing and hospital expenses. The parents shall equally pay for all extracurricular activities, sports and music lessons (including equipment), driver's education, after school clubs, school trips, and other enrichment programs, summer camp or other organized summer programs would be paid equally by both parties. The father shall pay for the children's cell phones. The parties will equally share any automobile insurance premium attributable to a vehicle that the children may utilize to the extent that the insurance increases due to a child's driving the vehicle.
(a) The children's private school tuition and expenses and the Kumon tuition shall be paid 85% by the Husband and 15% by the Wife (except that the Husband is paying 100% of the children's school tuition and expenses for the 2016-2017 school year); however, in the event the Father earns $300,000 or more in any calendar year, he shall be solely [*4]responsible for the children's private school expenses and Kumon for the following school year. For example, if the Father earns in excess of $300,000 in 2016, he would be responsible for the total private school and Kumon expenses for the 2017-2018 school year.
(b) Neither party would be responsible for child care costs incurred by the other parent.

 * * *

21. The Basic Child Support, the Child Related Expenses and the College Expenses (hereinafter defined) are in full satisfaction of, and the Wife waives and relinquishes any and all rights and claims to, additional child support and payment of third party expenses for or on behalf of the Children, except as otherwise set forth herein.

 * * *

23. The payments for the Basic Child Support, the Child Related Expenses and College Expenses made by the Husband are child support, and therefore, shall not be included as the Wife's income on her income tax returns nor shall they be deducted by the Husband on his income tax returns.
24. The Mother shall be entitled to claim the children as exemptions/dependents on her income tax returns.

 * * *

 ARTICLE X.

 COLLEGE EXPENSES

2. The parties agree that it is their desire that the children obtain a college education. In the event they are unable to agree upon the payment of college expenses, either party shall have the right to seek an order from the Court.
3. The Father acknowledges that he maintains 529 accounts for each child at American Funds with a value of $39,783.67 for each child. The Father agrees that he will provide the Mother with a statement of the balance in each account annually on the anniversary date of this Agreement until the funds are exhausted pursuant to the parties' subsequent agreement or a court order.
4. To the extent that either Party or a third party designee of a Party provides assets for a Child's college education, those funds shall be used solely to offset that Party's college obligation. 

 * * *

 ARTICLE XIX.

 DEFAULT

1. In the event that either Party defaults with respect to any obligation under this Agreement and said default is not remedied within twenty (20) days after the sending of a written notice by certified or overnight mail to the defaulting Party specifying said default, the defaulting Party agrees to indemnify the other Party against or to reimburse such other Party for any and all expenses, costs and attorney's fees and disbursements resulting from or made necessary by the bringing of any suit or other proceeding to enforce any of the terms, covenants or conditions of this Agreement to be performed or complied with by the defaulting Party or to enforce any of the other Party's rights to [*5]recover any amount to be paid to him or her by the defaulting Party pursuant to this Agreement, provided such suit or other proceeding results in a judgment, decree or order in favor of the Party seeking to enforce said indemnity
2. For the purposes of this Agreement, it is understood and agreed that in the event that either Party shall institute a suit or other proceeding against the other Party to enforce any of the terms, covenants or conditions of this Agreement and after the institution of such action or proceeding and before judgment is or can be entered the defaulting Party shall comply with such term or condition of the Agreement, then and in that event, the suit, such motion or proceeding instituted by the other Party shall be deemed to have resulted in a judgment, decree or order in favor of the non-defaulting Party.
On May 5, 2023, the Court was scheduled to conduct a contempt hearing in this matter with respect to a prior motion. The Court did not hold the hearing because the parties placed a settlement on the record, resolving that Motion Seq. #4 (NYSCEF Doc. No. 38 at 2-9 [emphasis added]): 
MS. ABRAMS: Thank you. The settlement being placed on the record is in connection with the order to show cause filed by plaintiff on or about September 9th of 2022 which sought to hold the defendant in contempt of Court based upon various violations of the party's stipulation of settlement incorporated by reference and not merged into the party's judgment of divorce.
The matter was scheduled for a trial today, May 5th, 2023. In lieu of a trial the parties have agreed to resolve the requested relief in the order to show cause as follows: The parties acknowledge that the total arrears due and owing from the defendant to the plaintiff is $289,899.19. This sum includes the money judgment entered on or about March 17th of 2022 plus accrued interest in the total amount of $25,193.99. It also includes the money judgment filed on or about May 19th, 2022 plus accrued interest in the total amount of $66,688.12.
This sum also includes unpaid spousal maintenance from September 1st, 2021 through February 10th, 2023 in the amount of $57,772. It also includes the additional maintenance due and owing on income in excess of 200,000 and below 300,000 pursuant to the party's stipulation for 2021 in the amount of $13,399[.]40. It includes unpaid child support for July of 2022 for both children in the amount of $3,333 plus child support for the younger child after the emancipation of the older child for the months of December 2022, January 2023 and half of February of 2023 through April of 2023 less amounts garnished which garnishment began in the middle of February 2022 for a total amount for that period of time of $7,628.20.
In addition it includes the additional child support for 2021 on income in excess of 200,000 and less than 300,000 of $13,394.40. This is based upon 11 months, not 12 due to the emancipation of the older child. It also includes additional maintenance on income in excess of 200,000 and less than 300,000 for the year 2023 in the amount of $20,000 and additional child support for the year 2023 in the additional amount of $18,333.34, which also includes the reduction due to the emancipation of the older [*6]child.
This stipulation also includes monthly child support for the younger child based upon $300,000 of income pursuant to the stipulation for the balance of the year 2023 and through February 2024 when the younger child would become emancipated in amount of $4,250 per month, which is the 17 percent of $300,000. We did receive a pay stub from the  several pay stubs from the defendant which reflects that his income in 2023 will be in excess of $300,000. It also includes legal fees in connection with these proceedings commencing with a default letter prior to filing the order to show cause of $19,691.74.
The parties are going to sign and the Court is going to so order, not only this stipulation but a new garnishment which terms and conditions will indicate that the Support Collections Unit will garnish 60 percent of the allowable pay of the defendant to satisfy the above arrears. The parties further acknowledge that there's currently in effect a garnishment that was filed in or about March of 2023 for current support for the party's younger child.
The defendant agrees that commencing May 30th and continuing on the last business day of each month thereafter until the new garnishment reflects the 60 percent deduction is in effect that he will pay to the plaintiff no later than her receiving it on the last business day of the month the difference between the garnished amount and $6,000. For example, in the event in the month of May 2023 the plaintiff receives by virtue of the garnishment $2,800 on or before May 30th of 2023, the defendant will remit a check such that it will be received by the plaintiff no later than the last business day of the month in the amount of $3200, so that the garnishment and the difference between the garnishment and $6,000 will be paid directly by the defendant to the plaintiff until such time as the new garnishment, which will take 60 percent of the allowed pay of the defendant is in full force and effect.
In the event there's a month when there's been both a garnishment from the February 2023 garnishment and the new garnishment, any additional amount will be applied toward the arrears due and owing to the plaintiff. In the event the defendant defaults by not making a payment pursuant to this stipulation, either directly or otherwise, or leaves his job for any reason, interest shall accrue from that date forward for the balance then owed on the money judgment and the plaintiff wife shall have the right to seek a finding of contempt.
The above contemplates that all child support and maintenance due under the terms of the party's divorce stipulation through child support ending in February 2024 as well as the additional child support based upon defendant's 2023 income using his pay stubs for the first four-and-a-half months of this year is incorporated into this dollar amount.
MR. FAVA: So the section regarding the child support and maintenance are superseded or null and void and superseded by this agreement to the extent modified by this [*7]agreement.
MS. ABRAMS: Yes, I was going to say that, yes. The defendant agrees that he's waiving any mistake of fact on the garnishment as to the calculations that have been put on the record today. The parties further agree that as part of this settlement the defendant is turning over a check to the plaintiff in the amount of $20,000 toward the arrears put on the record today. To the extent that that check does not clear, the plaintiff shall have the right to restore this order to show cause to the calendar, the Court's calendar by sending a letter, and that will be deemed a violation of this stipulation.
In addition, the parties agree that the money judgments referenced from 2022 are subsumed into the new one and once the paperwork is filed in connection with today's settlement, Counsel will file the appropriate paperwork to have those money judgments vacated based upon the new money judgment arrived at today.
MR. FAVA: To be clear, they'll be satisfactions of judgments with the understanding that those numbers have been now subsumed by this new order.
MS. ABRAMS: Correct. To the extent not modified therein the terms of the party's stipulation and judgment from the divorce remain in full force and effect along with Judge Murphy's decision and order dated January 4th, 2022, which ordered the father's pro-rata college obligation at 85 percent and the mother's pro-rata college obligation at 15 percent.
MR. FAVA: Just to be clear, the arrears set forth in that decision that were due and owing at the time which allowed the money judgments to be entered and the purge amount that was paid are, again, null and void and no longer in full force and effect and superseded by this stipulation here.
MS. ABRAMS: Which is why I indicated that the only thing that remains in full force and effect from Judge Murphy's decision and order is the pro-rata on the children's college education. I believe that represents the settlement of the parties. The record should also reflect that I've reviewed both the income execution and the order regarding income execution that Counsel and I have drafted this morning, and I believe all three of these documents will be signed and submitted to the be so ordered.
MR. FAVA: Yes, once we have the transcript it will be submitted to the Court for signature to so order. Since we've placed the stipulation on the record, the income execution for support enforcement pursuant to CPLR 5241 will be handed up to the Court for signature. There will also be an order saying that the Support Collection Unit will take over the file so that there's an accounting and everything can move forward smoothly. The parties will fill out the appropriate application so that the Support Collection Unit can get involved, and at this time I will be handing over a check drawn from Citibank from [O.D.]'s account ending in 5328, check number 305, made payable to [L.D.] in the amount of $20,000. I'm handing that over to Ms. Abrams.
MS. ABRAMS: Thank you. I'm acknowledging receipt, handing it to my client.
Whether Defendant is in contempt for not paying his pro rata share of I.D.'s 2023-2024 [*8]college expenses is an issue to be resolved by this Court. "In order to adjudicate a party in civil contempt, a court must find: (1) that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect, (2) that the party against whom contempt is sought disobeyed the order, (3) that the party who disobeyed the order had knowledge of its terms, and (4) that the movant was prejudiced by the offending conduct" (Dalton v Dalton, 164 AD3d 1300, 1301-1302 [2d Dept 2018], citing El-Dehdan v El-Dehdan, 26 NY3d 19, 29 [2015]). "The party seeking a finding of civil contempt must prove these elements by clear and convincing evidence" (Dalton v Dalton, 164 AD3d at 1302). "To satisfy the prejudice element, it is sufficient to allege and prove that the contemnor's actions were calculated to or actually did defeat, impair, impede, or prejudice the rights or remedies of a party" (Pathak v Shukla, 164 AD3d 687, 689 [2d Dept 2018]). "'Once the movant establishes a knowing failure to comply with a clear and unequivocal mandate, the burden shifts to the alleged contemnor to refute the movant's showing, or to offer evidence of a defense, such as an inability to comply with the order'" (Toranzo v Toranzo, 185 AD3d 621, 623 [2d Dept 2020], quoting El-Dehdan v El-Dehdan, 114 AD3d at 17). "A hearing is required if the papers in opposition raise a factual dispute as to the elements of civil contempt, or the existence of a defense" (Toranzo v Toranzo, 185 AD3d at 623). 
It is undisputed that Defendant has not contributed to the cost of RPI for I.D. for the 2023-2024 academic year. However, Defendant claims he is not liable for his share of that cost because: (1) he was not consulted about I.D.'s decision to attend RPI in violation of the parties' Parenting Stipulation; (2) I.D. is emancipated as she is over the age of 21; and (3) I.D. is emancipated because she left college for over a year to pursue a modeling career. 
"A stipulation of settlement in a matrimonial action is a contract subject to principles of contract interpretation" (Perry v Perry, 13 AD3d 508 [2d Dept 2004]). "Where the stipulation is clear and unambiguous on its face, the intent of the parties must be gleaned from the four corners of the instrument, and not from extrinsic evidence" (Perry v Perry, 13 AD3d at 508-509). "'A court may not write into a contract conditions the parties did not insert by adding or excising terms under the guise of construction, and it may not construe the language in such a way as would distort the contract's apparent meaning'" (Pinto v Pinto, 209 AD3d 778, 780 [2d Dept 2022], quoting Cohen-Davidson v Davidson, 291 AD2d 474, 475 [2d Dept 2002]). "Moreover, a court cannot reform an agreement to what it thinks is proper, if the parties have not assented to such a reformation" (Cohen-Davidson v Davidson, 291 AD2d at 475). 
Further, "stipulations of settlement placed upon the record to settle a matrimonial action are not lightly cast aside and are enforceable absent a showing of fraud, duress or mistake" (Sood v Sood, 19 Misc 3d 971, 972 [Sup Ct, NY County 2008], citing Balkin v Balkin, 43 AD3d 967 [2d Dept 2007]). "For public policy reasons, such stipulations are favored by the courts, 'especially those entered in open court, and including those in matrimonial actions, where strict enforcement not only accomplishes efficient dispute resolution but also effectuates judicial economy'" (Sood v Sood, 19 Misc 3d at 972, quoting Rubenfeld v Rubenfeld, 279 AD2d 153, 156 [1st Dept 2001]). 
The Court finds that Plaintiff's claim that the clear mandate of the parties' Settlement Agreement and May 5, 2023 Stipulation that Defendant continues to be obligated to pay the children's college expenses at this time is "not borne out by the language" of those agreements. The plain language of the parties' August 19, 2023 Settlement Agreement states that the payment of college expenses ceases in the same manner as child support upon an emancipation event. As noted above (NYSCEF Doc. No. 60 at 31-33),
14. Except for arrears accrued, if any, other accrued and unsatisfied obligations of the Father, or for other reasons set forth herein, the obligations of the Father with respect to the Basic Child Support Payments, all "Child Related Expenses'' (as hereinafter defined), and all other obligations of the Father including those set forth in Article X (the "College Expenses'') shall end with respect to a Child upon the earliest to occur of:
(a) an Emancipation Event with respect to a Child;
(b) the death of the Father; or
(c) the death of the Mother ("a"-"e" herein collectively defined as "Child Support Termination Event").
"In the absence of a voluntary agreement, a parent may not be directed to contribute to the college education of a child who has attained the age of 21 years" (Pape v Pape, 205 AD3d 920, 921 [2d Dept 2022]; see Poli v Poli, 286 AD2d 720, 722 [2d Dept 2001]). "In interpreting a stipulation of settlement to determine whether an agreement to contribute to the college expenses of a child older than 21 is present, 'the court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized'" (Pape v Pape, 205 AD3d at 921, quoting Cleva v Cleva, 139 AD3d 78, 786 [2d Dept 2016] [internal quotation marks omitted]; but see Attea v Attea, 30 AD3d 971, 973 [4th Dept 2006] [father expressly obligated himself to pay for his sons' college education without limitation based on a particular age, number of years or semesters, or consecutive course of study; thus, father obligated to continue to pay for more than four years of college expenses, especially because he specifically agreed to pay his younger sons' college educations comparable to that paid for parties' older children]). 
Plaintiff asserts that the issue of Defendant's obligation to continue to pay college costs was confirmed on May 5, 2023. However, upon its own review, the Court finds that the plain language of the May 5, 2023 Stipulation reflects an acknowledgement of Defendant's obligation to pay 85% of the children's college costs, not his continuing obligation to pay the children's college costs after the children are emancipated. In fact, the parties unequivocally acknowledged in open court that I.D. was emancipated as of February 2023 — approximately three months prior to the May 5, 2023 oral agreement — and T.D. was to be emancipated after February 2024 (NYSCEF Doc. No. 38 at 4). Moreover, the parties affirmed that "[t]o the extent not modified therein," the stipulation of settlement and judgement of divorce remained in full force and effect along with Judge Murphy's January 2, 2022 Decision and Order (NYSCEF Doc. No. 38 at 7). However, despite Plaintiff's present assertion to the contrary, Judge Murphy's Decision and Order did not address the duration of the parties' contribution to the children's college costs, only their pro-rata share (NYSCEF Doc. No. 6 at 7-8). Because the Court cannot add terms to a stipulation, the Court finds that the plain language of the parties' agreements reflects that their obligations to pay for the children's college ceased upon the children's emancipation (NYSCEF Doc. No. 60 at 31-33), which was agreed to in open court as being age 21 (NYSCEF Doc. No. 38 at 3-4). Thus, Plaintiff failed to establish a prima facie case of contempt. 
And to the extent Defendant states that he was not consulted before I.D. committed to attending RPI, Plaintiff fails to dispute this fact. In her moving papers, she failed to include or even reference the language in, let alone the existence of, the Parenting Agreement that referenced college selection and the parties' obligation to engage in meaningful consultation with [*9]respect to the children's college selections. And when this requirement was raised by Defendant as a defense in his opposition papers, Plaintiff did not respond with any facts to raise an issue of fact warranting a hearing (see Del Vecchio v Del Vecchio, 219 AD3d 572, 578-579 [2d Dept 2023] [where record does not reflect a bona fide issue of fact, no hearing required]; see generally Executive Fliteways, Inc v Murta, 66 Misc 3d 1215[A], *3 [Sup Ct, Suffolk County 2020] [defendant does not offer any reply controverting plaintiff's assertions and proof submitted in opposition to motion; thus, plaintiff's assertions are deemed admitted by defendant], citing McNamee Const. Corp. v City of New Rochelle, 29 AD3d 544 [2d Dept 2006]). In fact, Plaintiff did not submit an affidavit in reply, only providing her attorney's affirmation which contained no personal knowledge of the facts (see generally Zuckerman v City of New York, 49 NY2d 557 [1980] [attorney affirmation insufficient to raise factual issue where attorney lacks personal knowledge of facts]). 
Accordingly, it is hereby
ORDERED that Plaintiff's motion is denied; and it is further
ORDERED that any issue not directly addressed herein is denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: March 26, 2024
White Plains, New York
ENTER:
Hon. James L. Hyer, J.S.C.