[991 NE2d 684, 969 NYS2d 826]

MICHELLE GALETTA, Appellant, v GARY GALETTA, Respondent.

Argued April 23, 2013; decided May 30, 2013

## POINTS OF COUNSEL

*Barney & Affronti, LLP*, Rochester (*Francis C. Affronti* of counsel), for appellant. I. Summary judgment should have been granted to Michelle Galetta determining the prenuptial agreement to be invalid and unenforceable because there is no proof the notary who took Gary Galetta's signature knew him or had satisfactory evidence he was the same person described in and who executed the agreement. (*Matisoff v Dobi*, 90 NY2d 127.) II. Gary Galetta's claim the notary's affidavit cured the defective acknowledgment was not raised before the trial court or in his brief to the Appellate Division. Consequently the issue whether or under what circumstances the acknowledgment could be cured was not before the Court. (*Ciesinski v Town of Aurora*, 202 AD2d 984; *Fresh Pond Rd. Assoc. v Estate of Schacht*, 120 AD2d 561, 68 NY2d 802; *Matter of Helles v Helles*, 87 AD3d 1273; *Kumar v Kumar*, 96 AD3d 1323; *Matter of D'Angelo v Lopez*, 94 AD3d 1261; *Verkey v Hebard*, 99 AD3d 1205; *Fischer v Zepa Consulting*, 263 AD2d 946, 95 NY2d 66; *Memory Gardens v D'Amico*, 91 AD2d 1160.) III. A defective acknowledgment in a prenuptial agreement cannot be cured at a later point in time. (*Anonymous v Anonymous*, 253 AD2d 696, 93 NY2d 888; *D'Elia v D'Elia*, 14 AD3d 477; *Leighton v Leighton*, 46 AD3d 264, 10 NY3d 739; *Matisoff v Dobi*, 228 AD2d 200; *Stein v Stein*, 14 Misc 3d 453; *Schoeman, Marsh & Updike v Dobi*, 264 AD2d 572, 94 NY2d 944; *People ex rel. Conklin v Board of R.R. Commrs.*, 105 App Div 273.) IV. Assuming an acknowledgment can be cured at a later date, summary judgment in this case should have been granted because the notary's affidavit did not create a triable issue of fact. (*Zuckerman v City of New York*, 49 NY2d 557.)

*Kathleen P. Reardon*, Rochester, for respondent. I. The Supreme Court did not err in determining that the prenuptial agreement was properly acknowledged and correctly denied plaintiff's motion for summary judgment. (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851; *Alvarez v Prospect Hosp.*, 68 NY2d 320; *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395; *Zuckerman v City of New York*, 49 NY2d 557; *Matisoff v Dobi*, 90 NY2d 127; *Weinstein v Weinstein*, 36 AD3d 797; *Armstrong v Combs*, 15 App Div 246; *Filkins v Filkins*, 303 AD2d 934; *D'Elia v D'Elia*, 14 AD3d 477; *Anonymous v Anonymous*, 253 AD2d 696.) II. The issue as to any defect in the acknowledgment as alleged by plaintiff and as cured by defendant's proof was properly reviewed and decided by the appellate court.

(*Schoeman, Marsh & Updike v Dobi*, 264 AD2d 572, 94 NY2d 944, 97 NY2d 721, 100 NY2d 508; *Leighton v Leighton*, 46 AD3d 264, 10 NY3d 739; *Douglas Elliman-Gibbons & Ives v Kellerman*, 172 AD2d 307; *Lindlots Realty Corp. v County of Suffolk*, 278 NY 45; *Rentways, Inc. v O'Neill Milk & Cream Co.*, 308 NY 342.) III. The Appellate Division correctly determined that a defect in a contemporaneously executed acknowledgment in a prenuptial agreement may be cured subsequent to the execution of the acknowledgment. (*Matisoff v Dobi*, 90 NY2d 127; *Matter of Maul*, 176 Misc 170, 262 App Div 941, 287 NY 694; *Matter of Saperstein*, 254 AD2d 88; *Anonymous v Anonymous*, 253 AD2d 696; *Schoeman, Marsh & Updike v Dobi*, 264 AD2d 572, 94 NY2d 944; *Stein v Stein*, 14 Misc 3d 453; *D'Elia v D'Elia*, 14 AD3d 477; *Filkins v Filkins*, 303 AD2d 934; *Arizin v Covello*, 175 Misc 2d 453.) IV. Even if this Court believes a cure was necessary, defendant raised a triable issue of fact by providing the bank manager's affidavit. (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851; *Soltis v State of New York*, 188 AD2d 201; *Gier v CGF Health Sys.*, 307 AD2d 729; *Rivera v Anilesh*, 8 NY3d 627; *Halloran v Virginia Chems.*, 41 NY2d 386; *Matter of Kellum*, 52 NY 517.)

## OPINION OF THE COURT

GRAFFEO, J.

In this matrimonial action, plaintiff Michelle Galetta sought a determination that a prenuptial agreement she and defendant Gary Galetta signed was invalid due to a defective acknowledgment. Because we conclude that plaintiff was entitled to summary judgment declaring the agreement to be unenforceable under Domestic Relations Law § 236 (B) (3), we reverse the order of the Appellate Division, which held there was a triable question of fact on that issue.

Michelle Galetta and Gary Galetta were married in July 1997. About a week before the wedding, they each separately signed a prenuptial agreement. Neither party was present when the other executed the document and the signatures were witnessed by different notaries public. The agreement had apparently been prepared by Gary's attorney; Michelle elected not to be represented by counsel. In substance, the parties agreed that their separate property, as listed on attached addenda, would remain separate and not subject to equitable distribution in the event of dissolution of the marriage. They also decided that neither would seek maintenance from the other. It is undisputed that the signatures on the document are authentic and there is

no claim that the agreement was procured through fraud or duress.

The parties' signatures and the accompanying certificates of acknowledgment are set forth on a single page of the document. The certificates appear to have been typed at the same time, with spaces left blank for dates and signatures that were to be filled in by hand. The certificate of acknowledgment relating to Michelle's signature contains the boilerplate language typical of the time. However, in the acknowledgment relating to Gary's signature, a key phrase was omitted and, as a result, the certificate fails to indicate that the notary public confirmed the identity of the person executing the document or that the person was the individual described in the document. The record does not reveal how this error occurred and apparently no one noticed the omission until the issue was raised in this litigation.

In 2010, defendant husband filed for divorce. Plaintiff wife subsequently commenced this separate action seeking a divorce and a declaration that the prenuptial agreement was unenforceable. The wife moved for summary judgment on the request for declaratory relief, contending that the agreement was invalid because Domestic Relations Law § 236 (B) (3) compels that prenuptial agreements be executed with the same formality as a recorded deed and the certificate of acknowledgment relating to the husband's signature did not comport with Real Property Law requirements. The husband opposed the motion, asserting that the prenuptial agreement was enforceable because the language of the acknowledgment substantially complied with the Real Property Law. He submitted an affidavit from the notary public who had witnessed his signature in 1997 and executed the certificate of acknowledgment. The notary, an employee of a local bank where the husband then did business, averred that it was his custom and practice, prior to acknowledging a signature, to confirm the identity of the signer and assure that the signer was the person named in the document. He stated in the affidavit that he presumed he had followed that practice before acknowledging the husband's signature.

Supreme Court denied the wife's motion for summary judgment, reasoning that the acknowledgment of the husband's signature substantially complied with the requirements of the Real Property Law. In a divided decision, the Appellate Division affirmed the order denying summary judgment on a different rationale (96 AD3d 1565 [2012]). The majority held that the certificate of acknowledgment was defective but determined

that the deficiency could be cured after the fact and that the notary public affidavit raised a triable question of fact as to whether the prenuptial agreement had been properly acknowledged when it was signed in 1997. A two-justice dissent would have reversed and granted plaintiff summary judgment declaring the prenuptial agreement to be invalid because the acknowledgment was fatally defective. The dissent reasoned that the issue of whether a defect in an acknowledgment can be cured had not been preserved in the motion court but concluded, in any event, that such a deficiency cannot be cured, nor was the notary public's affidavit sufficient to raise a question of fact if a cure had been possible. The Appellate Division granted defendant leave to appeal to this Court, certifying the question: "Was the order of this Court . . . properly made?" Because plaintiff was entitled to summary judgment declaring the prenuptial agreement to be unenforceable, we answer that question in the negative.

Prenuptial agreements are addressed in Domestic Relations Law § 236 (B) (3), which provides:

> "An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded."

We interpreted this statute in *Matisoff v Dobi* (90 NY2d 127 [1997]), where we held that an unacknowledged postnuptial agreement was invalid. We observed that the statute recognizes no exception to the requirement that a nuptial agreement be executed in the same manner as a recorded deed and "that the requisite formality explicitly specified in Domestic Relations Law § 236 (B) (3) is essential" (*id.* at 132).

Real Property Law § 291, governing the recording of deeds, states that "[a] conveyance of real property . . . on being duly acknowledged by the person executing the same, or proved as required by this chapter, . . . may be recorded in the office of the clerk of the county where such real property is situated." Thus, a deed may be recorded if it is either "duly acknowledged" or "proved" by use of a subscribing witness. Because this case involves an attempt to use the acknowledgment procedure, we focus on that methodology.

The acknowledgment requirement fulfills two important purposes. First, "acknowledgment serves to prove the identity

of the person whose name appears on an instrument and to authenticate the signature of such person" (*Matisoff*, 90 NY2d at 133). Second, it necessarily imposes on the signer a measure of deliberation in the act of executing the document. Just as in the case of a deed where the law puts in the path of the grantor "formalities to check haste and foster reflection and care . . . [h]ere, too, the formality of an acknowledgment underscores the weighty personal choices to relinquish significant property or inheritance rights, or to resolve important issues concerning child custody, education and care" (*id*. at 136 [internal quotation marks and citation omitted]).

We noted in *Matisoff* that the acknowledgment requirement imposed by Domestic Relations Law § 236 (B) (3) is onerous and, in some respects, more exacting than the burden imposed when a deed is signed (*id*. at 134-135). Although an unacknowledged deed cannot be recorded (rendering it invalid against a subsequent good faith purchaser for value) it may still be enforceable between the parties to the document (i.e., the grantor and the purchaser). The same is not true for a nuptial agreement which is unenforceable in a matrimonial action, even when the parties acknowledge that the signatures are authentic and the agreement was not tainted by fraud or duress (*id*. at 135).

With these general principles in mind, we turn to the first issue presented in this case: whether the certificate of acknowledgment accompanying defendant husband's signature was defective. Three provisions of the Real Property Law must be read together to discern the requisites of a proper acknowledgment. Real Property Law § 292 requires that the party signing the document orally acknowledge to the notary public or other officer that he or she in fact signed the document. Real Property Law § 303 precludes an acknowledgment from being taken by a notary or other officer "unless he [or she] knows or has satisfactory evidence[ ] that the person making it is the person described in and who executed such instrument." And Real Property Law § 306 compels the notary or other officer to execute "a certificate . . . stating all the matters required to be done, known, or proved" and to endorse or attach that certificate to the document. The purpose of the certificate of acknowledgment is to establish that these requirements have been satisfied: (1) that the signer made the oral declaration compelled by Real Property Law § 292; and (2) that the notary or other official either actually knew the identity of the signer or secured "satisfactory evidence" of identity ensuring that the signer was the person described in the document.

At the time the parties here signed the prenuptial agreement in 1997,[1] proper certificates of acknowledgment typically contained boilerplate language substantially the same as that included in the certificate accompanying the wife's signature: "before me came (name of signer) to me known and known to me to be the person described in and who executed the foregoing instrument and duly acknowledged to me that s/he executed the same." The "to me known and known to me to be the person described in the document" phrase satisfied the requirement that the official indicate that he or she knew or had ascertained that the signer was the person described in the document. The clause beginning with the words "and duly acknowledged" established that the signer had made the requisite oral declaration.

In the certificate of acknowledgment relating to the husband's signature, the "to me known and known to me" phrase was inexplicably omitted, leaving only the following statement: "On the 8 [sic] day of July, 1997, before me came Gary Galetta described in and who executed the foregoing instrument and duly acknowledged to me that he executed the same." Absent the omitted language, the certificate does not indicate either that the notary public knew the husband or had ascertained through some form of proof that he was the person described in the prenuptial agreement. New York courts have long held that an acknowledgment that fails to include a certification to this effect is defective (*see Fryer v Rockefeller*, 63 NY 268 [1875] [applying predecessor to Real Property Law § 303,

---

1. At about the same time this agreement was executed, the legislature enacted Real Property Law § 309-a which codified model language to be used in a certificate of acknowledgment involving a signer who was not acting on behalf of a corporation (*see* L 1997, ch 179). That new statute, which remains in effect, indicated that an acknowledgment should read as follows (or "conform substantially" with the following):

> "On the [insert date] before me, the undersigned, personally appeared [insert name of signer], personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument" (Real Property Law § 309-a [1]).

The new language did not become mandatory until September 1999. It was intended to clarify existing law and encourage uniformity in filed deeds; it did not alter the substantive requirements for a valid acknowledgment that appear elsewhere in the Real Property Law, as discussed above.

held that acknowledgment of deed that did not establish signer's identity and relationship to document was invalid]; *Gross v Rowley*, 147 App Div 529 [2d Dept 1911], *appeal denied* 148 App Div 922 [1912] [acknowledgment deficient because it failed to certify that signer was person described in the instrument]; *see generally People ex rel. Sayville Co. v Kempner*, 49 App Div 121 [1st Dept 1900] [same]). Thus, we agree with the Appellate Division, which unanimously concluded that the certificate of acknowledgment did not conform with statutory requirements.

The husband continues to dispute that the acknowledgment is defective because he claims that it substantially complied with the Real Property Law. In support of this argument, he relies on a line of substantial compliance cases including *Weinstein v Weinstein* (36 AD3d 797 [2d Dept 2007]). *Weinstein* involved a prenuptial agreement that was signed after Real Property Law § 309-a set forth specific language to be included in an acknowledgment (*see* n 1, *supra*), yet the certificates of acknowledgment contained the former boilerplate language that had commonly been used prior to the statute. Although the acknowledgment did not track the preferred text, the Appellate Division concluded that it was nonetheless valid because the language was in substantial compliance with the new statute— which is all the statute required. There is no indication in *Weinstein* that any of the substantive elements of an acknowledgment were lacking—rather, in that case the parties merely used different verbiage to establish that the Real Property Law had been followed, a deviation in form (in light of Real Property Law § 309-a) but not substance. The same is not true here where a core component of a valid acknowledgment was not referenced in the certificate.

Because we conclude that the certificate of acknowledgment was defective, we address the question of whether such a deficiency can be cured and, if so, whether the affidavit of the notary public prepared in the course of litigation was sufficient to raise a question of fact precluding summary judgment in the wife's favor.[2] In *Matisoff*, a case where the parties had not attempted to have their signatures acknowledged, defendant

---

**2.** The wife argues that this issue was not preserved in the motion court but we agree with the Appellate Division majority that such an argument was evident from the husband's submission of the notary public affidavit in response to the wife's motion for summary judgment, a submission that was cited by Supreme Court in the oral decision denying summary judgment.

*(n. cont'd)*

husband similarly contended that the lack of certificates of acknowledgment had been cured by testimony both the husband and wife presented at the matrimonial trial admitting that the signatures were authentic and that the postnuptial agreement had not been signed under fraud or duress. We determined that it was unnecessary to decide whether the absence of an acknowledgment could be cured because, even if it could, the testimony from the parties was not the functional equivalent of an acknowledgment, which involves both the oral declaration of the signer and the written certificate of the official establishing that certain prerequisites were met.

Since *Matisoff,* the Appellate Divisions have grappled with the "cure" issue, which has largely arisen in cases where a signature was not accompanied by any certificate of acknowledgment—not in situations like this where there was a contemporaneously prepared certificate of acknowledgment but it is defective. In any event, the weight of Appellate Division authority is against permitting the absence of an acknowledgment to be cured after the fact, unless both parties engaged in a mutual "reaffirmation" of the agreement (*see D'Elia v D'Elia,* 14 AD3d 477 [2d Dept 2005] [where postnuptial agreement was not properly acknowledged, defendant's attempt to cure the defect by submitting a duly-executed certificate of acknowledgment at trial was not sufficient]; *Filkins v Filkins,* 303 AD2d 934, 935 [4th Dept 2003] [where antenuptial agreement was not acknowledged, plaintiff's attempt to cure defect by having agreement notarized and filed after divorce action had commenced failed "because the agreement was never reacknowledged"]; *Schoeman, Marsh & Updike v Dobi,* 264 AD2d 572 [1st Dept 1999], *lv dismissed* 94 NY2d 944 [2000], *lv dismissed* 97 NY2d 721 [2002], *lv denied* 100 NY2d 508 [2003] [legal malpractice action related to *Matisoff* litigation] [parties to divorce action cannot obtain retroactive validation of postnuptial agreement]; *Anonymous v Anonymous,* 253 AD2d 696 [1st Dept 1998], *lv dismissed* 93 NY2d 888 [1999] [where prenuptial agreement was not acknowledged, defect could not be cured by production of

Since the parties admitted in Supreme Court that their signatures were authentic and made no claims of fraud or duress, there was only one reason for the husband to proffer the notary public affidavit—to cure the purported deficiency in the certificate of acknowledgment. The fact that Supreme Court did not reach the "cure" argument because it concluded (incorrectly) that the acknowledgment was not defective does not render the issue unpreserved for review.

acknowledgment that surfaced after matrimonial action had commenced and some 12 years after agreement was signed]).[3]

When there is no acknowledgment at all, it is evident that one of the purposes of the acknowledgment requirement—to impose a measure of deliberation and impress upon the signer the significance of the document—has not been fulfilled. Thus, a rule precluding a party from attempting to cure the absence of an acknowledgment through subsequent submissions appears to be sound.

But this case does not involve the complete absence of an acknowledgment; rather, there was an attempt to secure an acknowledged document but there was an omission in the requisite language of the certificate of acknowledgment. A compelling argument can be made that the door should be left open to curing a deficiency like the one that occurred here where the signatures on the prenuptial agreement are authentic, there are no claims of fraud or duress, and the parties believed their signatures were being duly acknowledged but, due to no fault of their own, the certificate of acknowledgment was defective or incomplete. Although neither party submitted evidence concerning how the error occurred, we can infer from the fact that the signatures and certificates of acknowledgment are contained on a single page of the document in the same typeface that the certificates were typed or printed by the same person at the same time. Since one acknowledgment included all the requisite language and the other did not, it seems likely that the omission resulted from a typographical error. Thus, the deficiency may not have arisen from the failure of the notary public to

---

**3.** Several of the cases the husband relies on for the contrary proposition involve proving a signature through use of subscribing witnesses, a different procedure governed by other provisions of the Real Property Law (*see Matter of Maul*, 287 NY 694 [1942] [where wife signed waiver of right of election in presence of two subscribing witnesses, who also signed the document, fact that signatures of subscribing witnesses were not acknowledged at that time did not render document unenforceable]; *Matter of Saperstein*, 254 AD2d 88 [1st Dept 1998] [where wife executed waiver of right of election in presence of subscribing witness, who signed the document at that time attesting to that fact, subscribing witness could secure document evidencing proof of execution later on, after the husband died]). These cases neither involve Domestic Relations Law § 236 (B) (3) nor the acknowledgment method of validating a document. Moreover, the precedent suggests that there may be a distinction between the absence of an acknowledgment relating to the signature of a party and the absence of an acknowledgment relating to the signature of a subscribing witness (*compare Matter of Warren*, 16 AD2d 505 [2d Dept 1962], *affd* 12 NY2d 854 [1962], *with Matter of Maul*, 287 NY 694 [1942], *supra*).

engage in the formalities required when witnessing and acknowledging a signature. To the contrary, it may well be that the prerequisites of an acknowledgment occurred but the certificate simply failed to reflect that fact. Thus, the husband makes a strong case for a rule permitting evidence to be submitted after the fact to cure a defect in a certificate of acknowledgment when that evidence consists of proof that the acknowledgment was properly made in the first instance—that at the time the document was signed the notary or other official did everything he or she was supposed to do, other than include the proper language in the certificate. By considering this type of evidence, courts would not be allowing a new acknowledgment to occur for a signature that was not properly acknowledged in the first instance; instead, parties who properly signed and acknowledged the document years before would merely be permitted to conform the certificate to reflect that fact.

In this case, however, we need not definitively resolve the question of whether a cure is possible because, similar to what occurred in *Matisoff*, the proof submitted here was insufficient. In his affidavit, the notary public did not state that he actually recalled having acknowledged the husband's signature, nor did he indicate that he knew the husband prior to acknowledging his signature. The notary averred only that he recognized his own signature on the certificate and that he had been employed at a particular bank at that time (corroborating the husband's statement concerning the circumstances under which he executed the document). As for the procedures followed, the notary had no independent recollection but maintained that it was his custom and practice "to ask and confirm that the person signing the document was the same person named in the document" and he was "confident" he had done so when witnessing the husband's signature.

We have held that a party can rely on custom and practice evidence to fill in evidentiary gaps "where the proof demonstrates a deliberate and repetitive practice by a person in complete control of the circumstances" (*Rivera v Anilesh*, 8 NY3d 627, 634 [2007] [internal quotation marks and citation omitted]), thereby creating a triable question of fact as to whether the practice was followed on the relevant occasion. But the averments presented by the notary public in this case are too conclusory to fall into this category.

Custom and practice evidence draws its probative value from the repetition and unvarying uniformity of the procedure

involved as it depends on the inference that a person who regularly follows a strict routine in relation to a particular repetitive practice is likely to have followed that same strict routine at a specific date or time relevant to the litigation. For example, in *Rivera*, a dentist who did not recall the procedure that allegedly gave rise to plaintiff's dental malpractice action—a second injection of anesthesia—was able to avoid summary judgment in plaintiff's favor by supplying a detailed description of the multistep protocol she always followed when administering such injections, coupled with proof that this protocol, if followed, comported with generally accepted medical standards.

In contrast, the affidavit by the notary public in this case merely paraphrased the requirement of the statute—he stated it was his practice to "ask and confirm" the identity of the signer—without detailing any specific procedure that he routinely followed to fulfill that requirement. There are any number of methods a notary might use to confirm the identity of a signer he or she did not already know, such as requiring that the signer display at least one current form of photo identification (a driver's license or passport). It is also possible that a notary might not employ any regular strategy but vary his or her procedure for confirming identity depending on the circumstances (for example, a notary who works in a bank, law firm or other similar institution might occasionally rely on another employee who knew the signer to vouch for the signer's identity). If the notary actually remembered having acknowledged defendant's signature, he might have been able to fill in the gap in the certificate by averring that he recalled having confirmed defendant's identity, without specifying how. But since he understandably had no recollection of an event that occurred more than a decade ago, and instead attempted to proffer custom and practice evidence, it was crucial that the affidavit describe a specific protocol that the notary repeatedly and invariably used—and proof of that type is absent here. As such, even assuming a defect in a certificate of acknowledgment could be cured under Domestic Relations Law § 236 (B) (3), defendant's submission was insufficient to raise a triable question of fact as to the propriety of the original acknowledgment procedure. Plaintiff was therefore entitled to summary judgment declaring that the prenuptial agreement was unenforceable.

Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiff's motion for summary judgment

determining that the parties' prenuptial agreement is invalid should be granted, and the certified question should be answered in the negative.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order reversed, with costs, plaintiff's motion for summary judgment determining that the parties' prenuptial agreement is invalid granted, and certified question answered in the negative.