Matter of Koegel (2018 NY Slip Op 00833)





Matter of Koegel


2018 NY Slip Op 00833


Decided on February 7, 2018


Appellate Division, Second Department


Austin, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 7, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
CHERYL E. CHAMBERS
LEONARD B. AUSTIN
HECTOR D. LASALLE, JJ.


2015-06583

[*1]In the Matter of William F. Koegel, also known as William Fisher Koegel, deceased. John B. Koegel, petitioner-respondent; Irene Lawrence Koegel, respondent-appellant. (File No. 452/14)



APPEAL by Irene Lawrence Koegel, in a probate proceeding in which John B. Koegel petitioned pursuant to SCPA 1421 to invalidate her notice of spousal election made pursuant to Estates, Powers and Trusts Law § 5-1.1-A and for a declaration that she was not entitled to an elective share of the estate of William F. Koegel, also known as William Fisher Koegel, from an order of the Surrogate's Court (Thomas E. Walsh, Acting Surrogate), dated June 23, 2015, and entered in Westchester County, which denied her motion to dismiss the petition pursuant to CPLR 3211(a)(1) and Domestic Relations Law § 236(B)(3).



Himmel & Bernstein, LLP, New York, NY (Andrew D. Himmel of counsel), for respondent-appellant.
McCarthy Fingar LLP, White Plains, NY (Robert M. Redis of counsel), for petitioner-respondent.



AUSTIN, J.


OPINION & ORDER
In Galetta v Galetta (21 NY3d 186), the Court of Appeals left unanswered the question of whether a defective acknowledgment of a prenuptial agreement could be remedied by extrinsic proof provided by the notary public who took a party's signature. For the reasons that follow, we conclude that such proof can remedy a defective acknowledgment. Accordingly, we affirm the order of the Surrogate's Court, which denied the appellant's motion to dismiss a petition to invalidate her notice of spousal election.
I.
The appellant, Irene Lawrence Koegel (hereinafter Irene), and the decedent were married on August 4, 1984. The decedent had been widowed twice before marrying Irene. Irene had been widowed in July 1983. Irene and the decedent were married for more than 29 years at the time of the decedent's death on February 2, 2014.
A. Prenuptial Agreement
Prior to their marriage, the decedent and Irene executed a prenuptial agreement (hereinafter the agreement) in July 1984.
The agreement provided in the first paragraph that both the decedent and Irene desired that their marriage "shall not in any way change their pre-existing legal right, or that of their respective children and heirs, in the property belonging to each of them at the time of said marriage or thereafter acquired."
Pursuant to the second paragraph, the decedent and Irene agreed "[i]n consideration of said marriage and of the mutual covenants set out herein," that they would not make a claim as [*2]a surviving spouse on any part of the estate of the other. Further, they irrevocably waived and relinquished "all right[s] to . . . any elective or statutory share granted under the laws of any jurisdiction."
Further, as per the third paragraph, the decedent and Irene declared that their execution of the agreement was not "induced by any promise or undertaking made by or on behalf of the other to make any property settlement whatsoever." They acknowledged that they entered the agreement knowing the "approximate extent and probable value of the estate of the other."
At the bottom of the first page, both the decedent and Irene signed the agreement. The second page contained certificates of acknowledgment of each signature, each signed by their respective attorneys as notaries. The decedent's signature was acknowledged by William E. Donovan on July 26, 1984. The acknowledgment read, "On this 26 day of July, 1984, before me personally appeared WILLIAM F. KOEGEL, one of the signers and sealers of the foregoing instrument, and acknowledge the same to be his free act and deed." Irene's signature was acknowledged by Curtis H. Jacobsen on July 30, 1984. The language of the acknowledgment relating to the Irene's signature stated, "On this 30th day of July, 1984, before me personally appeared IRENE N. LAWRENCE, one of the signers and sealers of the foregoing instrument, and acknowledge the same to be her free act and deed." Neither acknowledgment attested to whether the decedent or Irene was known to the respective notaries.
B. Decedent's Last Will and Testament
In his last will and testament executed December 18, 2008, the decedent stated that he was married to Irene, that there were no children of their marriage, and that he had two sons by a prior marriage. He also stated that, prior to his marriage to Irene, they entered into an "antenuptial agreement dated July 26, 1984," and that "[t]he bequests to and other dispositions for the benefit of [Irene] contained in this Will [we]re made by [him] in recognition of and notwithstanding said antenuptial agreement."
The will provided that its provisions would control in the event of an inconsistency between it and those of the antenuptial agreement, but that the antenuptial agreement would be otherwise unaffected by the will. The decedent noted that he had made other dispositions in favor of Irene, "including but not limited to . . . designat[ing] her as the beneficiary of certain retirement benefits payable at [his] death."
The decedent bequeathed to Irene, in the event that she survived him, all of his automobiles, his interest in a condominium apartment in Vero Beach, Florida, subject to any outstanding mortgage and all of its contents, his condominium in Somers, New York, and all of its contents and the contents of their storage unit.
The will provided that Irene was to have the condominium in Somers for her exclusive use and occupancy, free of any rent, until her interest terminated upon remarriage, if the premises ceased to be her principal residence, or if she died. She was required to pay all carrying costs with respect to this property. Upon termination of Irene's interest, the property was to be sold and the proceeds distributed to his then living issue.
The decedent also made other specific bequests concerning personal property and sums of money to other individuals and the Hitchcock Presbyterian Church. The remainder of his estate was to be divided among his issue who survived him. The decedent's son, the petitioner, John B. Koegel (hereinafter John), was appointed as the executor of the decedent's estate.
The will was witnessed by three individuals who stated that the decedent declared the document to be his last will and testament. The subscribing witnesses executed a separate affidavit, sworn to before a notary on December 18, 2008, in which they swore that, inter alia, the decedent was of sound mind, memory, and understanding and had indicated to them that he had read the will and the contents expressed his wishes as to how his estate was to be distributed.
C. Decree Admitting Will to Probate and Letters Testamentary
and Notice of Election
John filed a petition to probate the decedent's last will and testament, and the Surrogate's Court granted the petition. Letters testamentary were issued to John on March 21, 2014.
On August 21, 2014, Irene filed with the court a notarized notice of election signed July 29, 2014. Irene stated that, as the decedent's surviving spouse, she was exercising her right of election pursuant to Estates, Powers and Trusts Law § 5-1.1-A "to take [her] share of the Decedent's [*3]estate to which [she was] entitled pursuant to said statute."[FN1]
D. Subject Petition to Set Aside the Spousal Election
In December 2014, John filed a petition to invalidate Irene's notice of election and for a declaration that she was not entitled to an elective share of the decedent's estate. John alleged that Irene was represented by counsel at the time she freely entered into the prenuptial agreement, pursuant to which she waived her right to assert an elective share against the decedent's estate. He also alleged that Irene was knowledgeable about the decedent's assets and had reasonable and sufficient time to make inquiries about his finances if she wished to do so prior to entering into the prenuptial agreement.
John asserted that Irene accepted the benefits of the prenuptial agreement during the marriage without ever raising questions about its validity or fairness. Thus, he claimed, she was barred by the doctrine of laches from contesting the terms of the prenuptial agreement.
John contended that Irene received substantial benefits from the decedent under the will, which included a possessory interest in the Somers condominium, with a date-of-death value of $628,285, and its contents (appraised value of $29,660); a 50% interest in the Vero Beach condominium, having a 50% date-of-death value of $275,000, and its contents; sole interest in an IRA, having a principal value of $116,497; an annuity having a principal balance at death of $129,004; lifetime benefits from a charitable remainder trust benefitting Williams College, having a date-of-death principal value of $131,129; an automobile valued at $10,500; and a 50% interest in a boat valued at $1,250 at the time of the decedent's death.
E. Answer and Objections
In her answer and objections to the petition, Irene admitted that she signed the agreement, but denied that either her signature or the decedent's signature was duly acknowledged in accordance with applicable statutes. As for Jacobsen's representation of her at the time the prenuptial agreement was executed, she admitted that Jacobsen was known to her by virtue of his prior representation of her regarding the settlement of her first husband's estate.
For her first affirmative defense and objection, Irene asserted that the prenuptial agreement was defective, invalid, and unenforceable pursuant to Galetta v Galetta (21 NY3d 186), because the acknowledgments omitted language expressly stating that the notaries knew the signers or had ascertained, through some sort of proof, that the signers were the persons described as required by Domestic Relations Law § 236(B)(3).[FN2]
II.
A. Irene's Motion to Dismiss the Petition
Irene moved pursuant to CPLR 3211(a)(1) and Domestic Relations Law § 236(B)(3) to dismiss the petition to set aside her notice of election on the basis that the acknowledgment of the signatures accompanying the prenuptial agreement omitted required language. In her affidavit in support of the motion, Irene recalled that she retained Jacobsen, whom she had used to handle the estate of her first husband.
B. John's Opposition
In opposition to Irene's motion, John argued that the form of the 1984 acknowledgments was proper and complied with the then-applicable requirements of EPTL 5-1.1, and substantially complied with the current requirements for acknowledgments through the use of the phrase "personally appeared." John contended that the phrase "personally appeared" reflected that the signer was "known" to the notary.
In any event, John noted that the two notaries, Jacobsen and Donovan, submitted affidavits stating that they respectively knew Irene and the decedent at the time that the agreement was executed and pointed out that Irene, in her answer and supporting affidavit, admitted that she signed the agreement and knew Jacobsen from his representation of her as the co-executor of her first husband's estate and had retained him to represent her with respect to the prenuptial agreement. John claimed that if there had been any technical defect with respect to the acknowledgments, the Jacobsen and Donovan affidavits cured those defects.[FN3]
In further opposition to Irene's motion, John submitted Donovan's affidavit, sworn to February 26, 2015. Donovan stated that, in 1984, he was a partner at Rogers & Wells, of which the decedent was also a partner. He recalled taking the acknowledgment that appeared on page two of the prenuptial agreement and stated that the decedent "did not have to provide me with any identification of who he was because he was well known to me at the time."
John also submitted Jacobsen's affidavit, sworn to February 25, 2015, in opposition to Irene's motion. Jacobsen stated that, in 1984, he was an attorney with Spengler Carlson Gubar Brodsky & Frischling, which had represented the estate of Irene's first husband, of which Irene was the co-executor. He recalled that he took the acknowledgment of Irene which appeared on page two of the prenuptial agreement. He explained that Irene did not have to provide identification to him since she was known to him at the time.
C. The Order Appealed From
In an order dated June 23, 2015, the Surrogate's Court denied Irene's motion. The court stated that:
"Giving [John] every favorable inference, the court finds that [Irene] has failed to sustain her burden of demonstrating that the facts as plead[ed] by [John] do not fit within any recognized legal theory, the Court of Appeals having specifically left open the question whether a defective acknowledgment can be cured as set forth in Galetta v Galetta, 21 NY3d 186."
Irene appeals from this order denying her motion.
III.
A. The Parties' Contentions on Appeal
Irene contends that, in Galetta, the Court of Appeals viewed the language in an acknowledgment in which a notary states that he or she knew the signer or ascertained his or her identity through some form of proof as a core component of a valid acknowledgment. She argues that the absence of such language in both acknowledgments in the subject prenuptial agreement rendered the agreement defective. She maintains that, pursuant to Galetta, this is so even in the absence of fraud, duress, or inequity.
Irene contends that the holding in Galetta is consistent with a prior decision of the Court of Appeals in which the Court found that Domestic Relations Law § 236(B)(3) recognizes no exception to the requirements that there be a proper acknowledgment (see Matisoff v Dobi, 90 NY2d [*4]127). She notes that, in Matisoff, the Court of Appeals stated that the legislative history and related statutory provisions established that the Legislature did not intend for the formality of acknowledgments to be expendable or ignored.
Irene further asserts that the importance of uniformity and predictable enforcement mandates that prenuptial agreements which do not include proper acknowledgments are not valid. She claims that, as a matter of public policy, courts should not allow parties the ability to cure defective acknowledgments because to do so would dilute the statute.
Irene also contends that this Court, in D'Elia v D'Elia (14 AD3d 477), rejected a party's ability to cure a defective acknowledgment. She asserts that the First and Fourth Departments have also found that a defective acknowledgment cannot be fixed at a later point in time.
In response, John argues that the situations presented in Matisoff and Galetta are different from this matter in that those cases involved matrimonial actions involving two living parties as opposed to the case at bar, an estate proceeding commenced after one of the parties to the prenuptial agreement had died. John contends that neither Galetta nor D'Elia holds that a technical defect in a contemporaneous acknowledgment cannot be cured.
John notes that, in Matisoff, the prenuptial agreement was not acknowledged at all, which was also the situation in the First and Fourth Department cases cited by Irene. He points out that here, Irene and the decedent were represented by counsel and there were contemporaneous acknowledgments of the properly executed prenuptial agreement. As a result, he maintains that Matisoff is not similar to the case at bar since, here, there would be no need for a new acknowledgment of the agreement in order to validate it.
John further maintains that Galetta does not establish a bright-line rule prohibiting a defective acknowledgment from being cured. He points out that, in Galetta, the notary's affidavit submitted by the party seeking to cure the defect was deficient since the notary did not personally know the party whose acknowledgment he took and the notary could not categorically swear that he was certain he took the appropriate steps to ascertain the identity of the party acknowledging the agreement. Also, the notary could only swear that he recognized his own signature, that he was employed at a bank at the time he executed the acknowledgment, and that he presumed that he followed his usual course and practice in taking acknowledgments although he had no independent memory of it.
John points out that both Donovan and Jacobsen swore that they each personally knew the parties whose acknowledgment they took when the prenuptial agreement was executed in 1984. Jacobsen had previously represented Irene prior to representing her in connection with the execution of the prenuptial agreement and Donovan was a law partner of the decedent.
John maintains that Irene failed to meet her burden in demonstrating that the facts set forth in the petition did not fall within any recognized legal theory. He further maintains there is a strong public policy allowing individuals to decide their marital affairs through agreements.
In reply, Irene states that "prior to the enactment of the Domestic Relations Law in 1980, the validity of an antenuptial agreement was determined by the Statute of Frauds." Citing Matisoff, she notes that the Legislature, in enacting Domestic Relations Law § 236(B)(3), decided to create a more onerous requirement in order for a nuptial agreement to be enforceable. She maintains that, given this background, courts should not dispense with the substantive statutory requirements constituting a valid acknowledgment, as this Court recognized in D'Elia.
Irene contends that the factual differences between this proceeding and those presented in Matisoff and Galetta do not matter, since the issue in all three cases is whether there is a bright-line test versus a flexible rule in construing the requirements of Domestic Relations Law § 236(B)(3). She maintains that these cases demonstrate that there is a bright-line rule.
B. Analysis
1. CPLR 3211(a)
"On a pre-answer motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction and the plaintiff's allegations are accepted as true and accorded the benefit of every possible favorable inference" (Granada Condominium III Assn. v Palomino, 78 AD3d 996, 996; see Leon v Martinez, 84 NY2d 83, 87).
"A motion to dismiss a complaint based on documentary evidence may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law'" (Stein v Garfield Regency Condominium, 65 AD3d 1126, 1128, quoting Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326; see CPLR 3211[a][1]; Held v Kaufman, 91 NY2d 425, 430-431; Parekh v Cain, 96 AD3d 812, [*5]815; Sato Constr. Co., Inc. v 17 & 24 Corp., 92 AD3d 934, 935-936). To qualify as documentary evidence, the evidence "must be unambiguous and of undisputed authenticity" (Fontanetta v John Doe 1, 73 AD3d 78, 86; see Flushing Sav. Bank, FSB v Siunykalimi, 94 AD3d 807, 808; Granada Condominium III Assn. v Palomino, 78 AD3d at 997).
"[J]udicial records, as well as documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other papers, the contents of which are essentially undeniable,' would qualify as documentary evidence' in the proper case" (Fontanetta v John Doe 1, 73 AD3d at 84-85, quoting David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10 at 21-22 [2005]; see Datena v JP Morgan Chase Bank, 73 AD3d 683, 685 [deed]; Bronxville Knolls v Webster Town Ctr. Partnership, 221 AD2d 248 [mortgage and note]).
"In opposition to a motion pursuant to CPLR 3211(a), a plaintiff may submit affidavits to preserve inartfully pleaded, but potentially meritorious claims'" (Raach v SLSJET Mgt. Corp., 134 AD3d 792, 794, quoting Rovello v Orofino Realty Co., 40 NY2d 633, 635; see CPLR 3211[a][7]; Town of Huntington v Long Is. Power Auth., 130 AD3d 1013, 1015).
2. Acknowledgments
Domestic Relations Law § 236(B)(3) provides, in part, that "[a]n agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded" (Matisoff, 90 NY2d at 130-131; see EPTL 5-1.1-A[e][2])[FN4]. Such agreement may include "a contract to make a testamentary provision of any kind, or a waiver of any right to elect against the provisions of a will" (Domestic Relations Law § 236[B][3]).
A proper acknowledgment requires both an oral declaration by the signer of the document made before an authorized officer and a written certificate of acknowledgment, attached to the agreement, endorsed by an authorized public officer attesting to the oral declaration (see Real Property Law § 306; Matisoff, 90 NY2d at 137-138; Matter of Henken, 150 AD2d 447, 447; see also General Construction Law § 11). Thus, an instrument is not duly acknowledged unless there is a written certificate as well as an oral acknowledgment (see Rogers v Pell, 154 NY 518; Matter of Abady, 76 AD3d 525, 526-527). However, "there is no requirement that a certificate of acknowledgment contain the precise language set forth in the Real Property Law. Rather, an acknowledgment is sufficient if it is in substantial compliance with the statute" (Weinstein v Weinstein, 36 AD3d 797, 798; see Matter of Abady, 76 AD3d at 526).
Pursuant to Real Property Law § 309-a(1), "[t]he certificate of an acknowledgment, within this state, of a conveyance or other instrument in respect to real property situate in this state, by a person, must conform substantially with the following form, the blanks being properly filled." The certificate of an acknowledgment form appears in the statute as follows:
"State of New York)
) ss.:
County of . . . )
On the . . . day of . . . in the year . . . before me, the undersigned, personally appeared . . . , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.
(Signature and office of individual taking acknowledgment.)" (Real Property Law § 309-a[1] [emphasis added]).
The acknowledgment requirement fulfills two goals. First, it "serves to prove the identity of the person whose name appears on an instrument and to authenticate the signature of such person" (Matisoff, 90 NY2d at 133; see Galetta, 21 NY3d at 191-192). Second, it imposes on the person signing a "measure of deliberation in the act of executing the document" (Galetta, 21 NY3d [*6]at 192). When there is no acknowledgment at all, this second requirement has not been fulfilled (see id. at 196).
3. Curability of Acknowledgment Defect
At the outset, John is correct that Matisoff is not controlling here. Matisoff does not provide support for Irene's position that the defective certificates of acknowledgment utterly refute the allegations in the petition that she is not entitled to an elective share of the decedent's estate due to the waiver set forth in the prenuptial agreement.
In Matisoff, a case involving a postnuptial agreement in which the parties waived any rights of election provided by the EPTL, "it [wa]s undisputed . . . that the document was not acknowledged by the parties or anyone else" (90 NY2d at 130).
The case at bar differs from Matisoff since here, there were certificates of acknowledgment of the signatures of Irene and the decedent, albeit the certificates did not contain the required language for acknowledgment as currently required by the Real Property Law. Similarly, Irene's reliance on D'Elia is misplaced since the agreement in that case was not at all acknowledged at the time of execution. Thus, this Court's statement in D'Elia that "[i]t is uncontroverted that the parties' postnuptial agreement was not properly acknowledged at the time that it was executed" (14 AD3d at 478) was not referring to a defective acknowledgment, as occurred here, but instead, to the absence of any acknowledgment, presenting this Court with the same situation which arose in Matisoff (see e.g. Ballesteros v Ballesteros, 137 AD3d 722, 723 [the "Promissory Note," drafted by the wife in 2009, after the parties were married, pursuant to which the husband agreed to purchase a condominium for the wife in the event that they divorced, was unenforceable since the "Promissory Note" was an agreement between spouses, which did not have a certificate of acknowledgment attached to it although the husband had the document signed by a notary]). In that vein, Irene's reliance on First and Fourth Department cases is also unavailing, as those cases are distinguishable for the same reason (see Filkins v Filkins, 303 AD2d 934, 934 ["It is undisputed that no written certificate of acknowledgment was attached when the parties entered into the agreement in 1995"]; Schoeman, Marsh & Updike v Dobi, 264 AD2d 572, 573 [legal malpractice counterclaim related to the Matisoff matrimonial action]; cf. Anonymous v Anonymous,
253 AD2d 696, 697 [the First Department found that the Supreme Court erred in granting renewal to the husband with respect to the wife's prior motion to declare a prenuptial agreement to be unenforceable, due to the husband's failure to submit an acknowledgment with the agreement, where the husband could have submitted the certificate of acknowledgment on the prior motion. Moreover, the First Department questioned the appearance of the "alleged acknowledgment in affidavit form which was executed and which surfaced some 12 years after the fact in the midst of a contested matrimonial action in light of the required formalities of Domestic Relations Law § 236(B)(3)"]).
Here, given the presence of executed acknowledgments, admittedly without certain language required by the Real Property Law, rather than an absence of any acknowledgment at all, the decision in Galetta is more on point and instructive than Matisoff and D'Elia with respect to the issue at bar. Further, the Surrogate's Court correctly found that the Court of Appeals, in Galetta, left open the issue of whether a defective acknowledgment can be cured.
In Galetta, the parties executed a prenuptial agreement before different notaries at different times one week before their wedding took place in July 1997 (21 NY3d at 189). As here, it was undisputed that the signatures on the document were authentic and there was no claim that the agreement was procured through fraud or duress (see id. at 189-190).
The certificate of acknowledgment relating to the wife's signature contained the proper language (see id. at 190). However, in the acknowledgment relating to the husband's signature, the certificate failed to indicate that the notary "confirmed the identity of the person executing the document or that the person was the individual described in the document" (id.). The husband filed for divorce and the wife separately filed for divorce and for a declaration that the prenuptial agreement was unenforceable (see id.).
The wife moved for summary judgment on her cause of action seeking declaratory relief, contending that the agreement was invalid because the certificate of acknowledgment relating to the husband's signature did not comport with the Real Property Law requirements. The husband opposed the motion on the basis that the language of the acknowledgment substantially complied with the Real Property Law. He also submitted an affidavit from the notary who had witnessed his signature in 1997 and executed the certificate of acknowledgment (see id.). "The notary, an employee of a local bank where the husband then did business, averred that it was his custom and practice, prior to acknowledging a signature, to confirm the identity of the signer and assure that the [*7]signer was the person named in the document. He stated in the affidavit that he presumed he had followed that practice before acknowledging the husband's signature" (id. [emphasis added]).
The Supreme Court denied the wife's motion, finding that the acknowledgment substantially complied with the requirements of the Real Property Law. A divided Fourth Department affirmed the order albeit on the different ground that, although the acknowledgment was defective, the deficiency could be cured after the fact and that the notary's affidavit raised a triable issue of fact as to whether the agreement had been properly acknowledged when executed (see 96 AD3d 1565, revd 21 NY3d 186).[FN5]
With respect to the issue of whether the certificate of acknowledgment accompanying the husband's signature was defective, the Court of Appeals determined that without stating " to me known and known to me,'" the certificate failed to indicate either that the notary knew the husband or had ascertained through some form of proof that the husband was the person described in the prenuptial agreement (21 NY3d at 193). The Court noted that:
"At the time the parties here signed the prenuptial agreement in 1997, proper certificates of acknowledgment typically contained boilerplate language substantially the same as that included in the certificate accompanying the wife's signature: before me came (name of signer) to me known and known to me to be the person described in and who executed the foregoing instrument and duly acknowledged to me that s/he executed the same'" (id. [footnote omitted]).
The Court pointed out that the " to me known and known to me to be the person described in the document'" language "satisfied the requirement that the official indicate that he or she knew or had ascertained that the signer was the person described in the document" (id.). It also observed that "[t]he clause beginning with the words and duly acknowledged' established that the signer had made the requisite oral declaration" (id.). Given the failure to include this language in the acknowledgment of the husband's signature, the Court of Appeals agreed with the Fourth Department that the acknowledgment did not conform with statutory requirements (see id. at 194).
Since the Court of Appeals determined that the certificate was defective, it then turned to address the question of "whether such a deficiency can be cured and, if so, whether the affidavit of the notary public prepared in the course of litigation was sufficient to raise a question of fact precluding summary judgment in the wife's favor" (id.). However, in looking at the proof submitted by the husband, the Court of Appeals stated that it "need not definitively resolve the question of whether a cure is possible because, similar to what occurred in Matisoff, the proof submitted here was insufficient" (id. at 197).
The Court of Appeals analyzed in detail the affidavit of the notary submitted by the husband in opposing the wife's summary judgment motion. The Court pointed out that the notary only recognized his own signature and had no independent recollection of notarizing the subject document (see id.). Given these statements, the Court found that the husband could not rely on the notary's custom and practice to fill in the evidentiary gaps because "the averments presented by the notary public in this case [we]re too conclusory to fall into this category" (id.).[FN6]
Further, the Court stated that if the notary had recalled acknowledging the husband's signature, "he might have been able to fill in the gap in the certificate by averring that he recalled [*8]having confirmed [the husband's] identity, without specifying how" (id. at 198). However, since the notary did not recall acknowledging the husband's signature and was attempting to rely on custom and practice evidence, the Court stated that "it was crucial that the affidavit describe a specific protocol that the notary repeatedly and invariably used—and proof of that type is absent here" (id.).
The situation at bar is akin to the hypothetical described by the Court of Appeals in Galetta, where the notaries here, the decedent's law partner and Irene's attorney, actually recalled acknowledging the signatures at issue. In such a situation, the Court of Appeals explained that the confirmation of the identity of the signer, through an affidavit, is sufficient without having to explain how the identity was confirmed (see id.).
Although, in support of her motion, Irene submitted the prenuptial agreement with the defective acknowledgments to demonstrate that the agreement was invalid, the Surrogate's Court properly declined to dismiss the petition on the basis of documentary evidence in light of John's submission in opposition to her motion. To supplement the allegations of the petition, in opposition, John submitted affidavits which showed that the petition may be meritorious in spite of the documentary evidence. In response to the assertion that the prenuptial agreement was invalid as
improperly acknowledged, the affidavits of Donovan and Jacobsen specifically stated that each observed the document being signed, took the acknowledgment in question, and personally knew the individual signer signing before him. In so doing, the defect in the acknowledgment was cured in order to give vitality to the expressed intent of the parties set forth in the prenuptial agreement.
Accordingly, the Surrogate's Court properly denied Irene's motion pursuant to CPLR 3211(a)(1) and Domestic Relations Law § 236(B)(3) to dismiss the petition. Therefore, the order is affirmed.
LEVENTHAL, J.P., CHAMBERS and LASALLE, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: Estates, Powers and Trusts Law § 5-1.1-A provides in part that: "(a) Where a decedent dies on or after September first, nineteen hundred ninety-two and is survived by a spouse, a personal right of election is given to the surviving spouse to take a share of the decedent's estate, subject to the following:
. . .
"(2) The elective share, as used in this paragraph, is the pecuniary amount equal to the greater of (i) fifty thousand dollars or, if the capital value of the net estate is less than fifty thousand dollars, such capital value, or (ii) one third of the net estate."

Footnote 2: For her second affirmative defense and objection, Irene maintained that the prenuptial agreement was invalid and unenforceable due to the absence of financial disclosure concerning the decedent's net worth and because it was executed under duress only five days before the wedding. She maintained that the agreement was also invalid because her attorney did not fully advise her on the right of spousal election, which she was waiving pursuant to the terms of the agreement, and the fact that the decedent's law firm, where he was a partner, drafted the agreement. Moreover, Irene contended that the agreement was not enforceable because the decedent's estate was worth in excess of $5 million and she, as the decedent's wife of 29 years, was only left a used car worth $10,000, a life estate in the Somers condominium for which she was responsible for all of the carrying charges yet, upon the sale of that property, none of the proceeds would go to her, and a 50% ownership in the Vero Beach condominium worth $275,000, which had an outstanding $86,000 mortgage for which she was responsible. Irene further contended that the agreement was invalid because the accounts on which she was named the beneficiary would only net an income of $3,700 per month, while the monthly payments on the two condominiums totaled $6,400.

Footnote 3: John also asserted that it would be inequitable for the court to permit Irene to declare a 30-year old agreement to be invalid when Irene received all the benefits of the agreement. John maintained that the decedent fully performed his obligations under the agreement and relied upon its validity in making his will.

Footnote 4: Subsection two of EPTL 5-1.1-A(e), which pertains to "Waiver or release of right of election," provides that "[t]o be effective under this section, a waiver or release must be in writing and subscribed by the maker thereof, and acknowledged or proved in the manner required by the laws of this state for the recording of a conveyance of real property."

Footnote 5: The dissent reasoned that summary judgment should have been awarded to the wife declaring the prenuptial agreement to be invalid since the acknowledgment was fatally defective (see 96 AD3d at 1569). It noted that the issue of whether the defect could be cured had not been raised in the Supreme Court and was, therefore, not properly before the Fourth Department. On the merits, it concluded that such a deficiency could not be cured, nor was the notary public's affidavit sufficient to raise a question of fact if a cure had been possible (see id.).

Footnote 6: The Court pointed out that the notary did not detail the specific procedure he routinely followed to " ask and confirm'" the identity of the signer (21 NY3d at 198). The Court reasoned that "[t]here are any number of methods a notary might use to confirm the identity of a signer he or she did not already know," such as asking the signer to produce valid photographic identification or asking another person to vouch for the signer's identity where, for example, the signer might have been a regular customer of the bank (id.).